Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
CADDELL & CHAPMAN
P.O. Box 1311
Monterey, CA 93942
Tel.: (713) 751-0400
Fax: (713) 751-0906

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| EDWARD PEÑA, *individually and on behalf of persons similarly situated,* <br><br> *Plaintiff,* <br><br> *v.* <br><br> INTERNATIONAL MEDICAL DEVICES, INC., MENOVA INTERNATIONAL, INC., GESIVA MEDICAL, LLC, JAMES J. ELIST, M.D., A MEDICAL CORPORATION, AND DR. JAMES ELIST, <br><br> *Defendants* | Case No. 2:22-cv-03391-SSS (PLAx) <br><br> **PLAINTIFF'S RESPONSE TO MOTION TO DISMISS** <br><br> Date: October 14, 2022 <br> Time: 2:00 pm <br> Crtm: 2 (via Zoom video conference) <br> Judge: Hon. Sunshine S. Sykes |

Case No. 2:22-cv-03391-SSS (PLAx)

# TABLE OF CONTENTS

I. Introduction ..........................................................................................1

II. Standard of Review ...........................................................................3

III. Argument and Authorities .................................................................4

    A.  Plaintiff has stated a claim for violation of the FAL, UCL, and CLRA because Plaintiff has alleged that Defendants made statements likely to mislead a reasonable consumer. ..................................................4

        1.  Defendants cannot use fine-print disclaimers to avoid the common-sense meaning of their advertising. ...................................6

        2.  Penuma's new 510(k) clearance with different Intended Purpose language does not cure Defendants' years of misrepresentations........................................................................10

    B.  Plaintiff has also stated a UCL claim based on Defendants' California Health & Safety Code violations...............................................................13

    C.  Plaintiff has also stated a claim for violation of the CLRA and UCL based on Defendants' omissions of material facts. .....................................14

    D.  Plaintiff's allegations are sufficiently detailed to put Defendants on notice of the challenged conduct. ...............................................................17

        1.  Plaintiff has identified the advertisements he saw and explained why they were misleading.............................................................17

        2.  Plaintiff has adequately alleged a joint enterprise and each Defendant's role in the alleged enterprise. ....................................20

    E.  The "learned intermediary doctrine" does not apply to this case.................22

    F.  This Court should deny Defendants' motion to dismiss Plaintiff's claims for equitable relief..........................................................................23

IV. Conclusion ..........................................................................................25

RESPONSE TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**CASES**

*Aberin v. Am. Honda Motor Co., Inc.*,
2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ...............................................25

*Adkins v. Comcast Corp.*,
2017 WL 3491973 (N.D. Cal. Aug. 1, 2017).................................................25

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015) ...............................................................20, 22

*Andren v. Alere, Inc.*,
207 F. Supp. 3d 1133 (S.D. Cal. 2016) ........................................................23

*Arizona Students' Ass'n v. Arizona Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016) ..........................................................................3

*Arora v. GNC Holdings, Inc.*,
2019 WL 6050750 (N.D. Cal. Nov. 15, 2019)...............................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....................................................................................1, 3

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001).......................................................................17

*Brady v. Bayer Corp.*,
237 Cal. Rptr. 3d 683 (Cal. Ct. App. 2018) ...............................................9, 12

*Cel-Tech Comms. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999).....................................................................................4

*City & County of San Francisco v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020)...........................................................23

*Culver v. Unilever United States, Inc.*,
No. 19-cv-9263, 2021 WL 2943937 (C.D. Cal. June 14, 2021) ...................18

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018).........................................................................24

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011).........................................................................21

*Drake v. Toyota Motor Corp.*,
No. 20-cv-01421, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020)................21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)..............................................................1, 2, 3, 6

*Friedman v. AARP, Inc.*,
   855 F.3d 1047 (9th Cir. 2017) .......................................................................9

*FTC v. QYK Brands LLC*,
   No. 20-cv-01431, 2022 WL 1090257 (C.D. Cal. Apr. 6, 2022) ..................20

*Gutierrez v. Carmax Auto Superstores California*,
   248 Cal. Rptr. 3d 61 (Cal. Ct. App. 2018) ...................................................15

*Gutierrez v. Johnson & Johnson Consumer Inc.*,
   No. 16-cv-1345, 2021 WL 822721 (S.D. Cal. Jan. 22, 2021).......................19

*Heliotis v. Schuman*,
   226 Cal.Rptr. 509 (Cal. Ct. App. 1986) .......................................................15

*Herrera v. Estee Lauder Companies, Inc.*,
   No. 12-cv-01169, 2012 WL 12507876 (C.D. Cal. Sept. 20, 2012) .............19

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009)................................................................................25

*Kang v. P.F. Chang's China Bistro*,
   844 Fed. App'x 969 (9th Cir. 2021)..............................................................23

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).......................................................................19

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012)..........................................................16

*Kim v. Benihana, Inc.*,
   No. 19-cv-02196, 2021 WL 1593248 (C.D. Cal. Feb. 24, 2021) ................23

*Klaehn v. Cali Bamboo, LLC*,
   No. 21-cv-55738, 2022 WL 1830685 (9th Cir. June 3, 2022).....................24

*Knuttel v. Omaze, Inc.*,
   No. 21-cv-09034, 2022 WL 1843138 (C.D. Cal. Feb. 22, 2022) ..................9

*LiMandri v. Judkins*,
   60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997) ...................................................15

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005)...........................................................................3

*Luong v. Subaru of Am., Inc.*,
   2018 WL 2047646 (N.D. Cal. May 2, 2018) ................................................25

*Madani v. Volkswagen Grp. of Am., Inc.*,
   2019 WL 3753433 (N.D. Cal. Aug. 8, 2019)................................................25

*Maisel v. S.C. Johnson & Son, Inc.*,
No. 21-cv-00413, 2021 WL 1788397
(N.D. Cal. May 5, 2021)......................................................9, 18, 24, 25

*Miller v. Peter Thomas Roth, LLC*,
No.19-cv-00698, 2020 WL 363045 (N.D. Cal. Jan. 22, 2020)......................9

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020)..............................................*passim*

*Morris v. Sun Pharma Global Inc.*,
No. 20-cv-10441, 2021 WL 3913191 (C.D. Cal. May 13, 2021).................21

*Motus v. Pfizer Inc.*,
196 F. Supp. 2d 984 (C.D. Cal. 2001).........................................23

*Nance v. International Medical Devices, et al.*,
No. 2:21-cv-02281-MCE-KJN (E.D. Cal.) ...................................10

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993).....................................................17

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008).........................................16

*Padilla v. Whitewave Foods Co.*,
No. 18-cv-09327, 2019 WL 4640399 (C.D. Cal. July 26, 2019)..............9, 23

*Polich v. Burlington Northern, Inc.*,
942 F.2d 1467 (9th Cir. 1991)..................................................25

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022)...............................................20, 22

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015).............................................5, 9, 23

*Ruiz v. Celsius Holdings*,
No. 21-cv-00128, 2021 WL 5811264 (S.D. Cal. July 28, 2021) .................23

*Saavedra v. Eli Lilly & Co.*,
No. 2:12–cv–9366, 2013 WL 3148923 (C.D. Cal. June 13, 2013)...............23

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)..................................................24

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011)..................................................17

*Thornton v. Micro-Star Int'l Co.*,
No. 17-cv-03231, 2017 WL 10621210 (C.D. Cal. 2017) ..........................20

*Tryan v. Ulthera, Inc.*,
No. 17-cv-02036, 2018 WL 3955980 (E.D. Cal. August 17, 2018)......*passim*

Case No. 2:22-cv-03391-SSS (PLAx)          – iv –

*Tucker v. Post Consumer Brands, LLC*,
    2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ...............................................10

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019) ........................................................................18

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)........................................................................18

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)...................................................................*passim*

**STATUTES**

21 U.S.C. § 331 .......................................................................................................13

CAL. BUS. & PROF. CODE § 17200 ............................................................................4

CAL. BUS. & PROF. CODE § 17500 ............................................................................4

CAL. CIV. CODE § 1770(a)(5) ...................................................................................4

CAL. HEALTH & SAFETY CODE § 110110 et seq.  ....................................................13

RESTATEMENT (SECOND) OF TORTS § 491 ............................................................20

**OTHER AUTHORITIES**

21 C.F.R. § 807.97 ..........................................................................................*passim*

Hehemann, *Penile Girth Enlargement Strategies: What's the Evidence?*,
    7 SEXUAL MEDICINE REVIEW 535 (2019)....................................................15

MERRIAM-WEBSTER DICTIONARY (2022) .................................................................11

OXFORD ENGLISH DICTIONARY (2022) ......................................................................11

**RULES**

FED. R. CIV. P. 9(b) ...................................................................................................2

## I. INTRODUCTION

For years Dr. James Elist, acting jointly with his wholly owned and controlled companies, has used false and misleading advertisements to exploit men's hopes and insecurities. As alleged in Plaintiff's First Amended Complaint, Dr. Elist's "Penuma" penile implant "causes disfigurement and scarring that often leads to a shortening of the erect penis in the majority of cases." (Dkt. 16 ¶ 62.) When patients complained to Dr. Elist, however, he did not change his practices to protect patients, but instead sent "cease-and-desist letters" to protect his profits. (*Id.* ¶ 36.) Dr. Elist and his companies continued to encourage normal, healthy men to "enhance and enlarge the length, girth, and size of your penis." (*Id.* ¶ 49.) What is more, Dr. Elist directed potential patients to a self-authored, self-serving study, which understated the rate of Penuma complications. (*Id.* ¶ 37.) Dr. Elist and his companies also continued to tout Penuma as the "the first FDA-cleared penile implant for cosmetic enhancement." (*Id.*) This statement was both (1) *literally false*, because Penuma had been cleared only "for use in the cosmetic correction of soft tissue deformities" and (2) *misleading*, because the cursory process of "Section 510(k) clearance" under the Food, Drug, and Cosmetic Act ("FDCA") "does not denote any FDA 'approval' as to the efficacy of a medical device." *Tryan v. Ulthera, Inc.*, No. 17-cv-02036, 2018 WL 3955980, at *5 (E.D. Cal. August 17, 2018); *see* 21 C.F.R. § 807.97 (510(k) clearance "does not in any way denote official approval of the device").

In Response to Plaintiff's Complaint, Dr. Elist and his companies continue their pattern of denial. Contrary to the well-established rule that on a motion to dismiss the Court must "assume the veracity of well-pleaded factual allegations,"[1] Defendants introduce matters outside the pleadings and double-down on their contention that Penuma complications occur in only a "small percentage" of cases.

---

[1] *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (cleaned up) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).

(*See* Dkt. 31 at 1, 15.) Plaintiff, however, has not only pled that such complications are in fact frequent, he has explained the physiological reasons why this is the case, detailing how a "pseudocapsule" of scar tissue forms around the Penuma device after surgery, making the dorsal surface of the penis less able to stretch, and thus shorter. (Dkt. 16 ¶ 53.) At the motion to dismiss stage, the Court must accept these well-pleaded allegations as true. *Eclectic Properties*, 751 F.3d at 996.

In addition, Defendants continue, as in their advertising, to attempt to use fine print qualifications and disclaimers to shield themselves from accountability for the common-sense meaning of their own deliberate misstatements. (Dkt. 31 at 7–8, 13–14.) It is the well-established rule in Ninth Circuit false advertising cases, however, that a fine-print disclaimer which conflicts with a prominent misleading claim does not prevent the prominent claim from being misleading. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 936–39 (9th Cir. 2008). These cases further establish that whether advertising is false or misleading to a "reasonable consumer" raises questions of fact that are appropriate for resolution on a motion to dismiss only in "rare situation[s]." *Williams*, 552 F.3d at 938; *see also Moore*, 966 F.3d at 1017. Because Plaintiff here has pled facts showing that Defendants' advertising claims were both literally false and misleading to reasonable consumers, as well as pleading an independent Unfair Competition Law ("UCL") claim based on Defendants' California Health & Safety Code violations and an independent Consumers Legal Remedies Act ("CLRA") claim based on Defendants' material omissions, the Court should deny Defendants' Motion to Dismiss. (*See infra* Sections III.A–C.)

The Court should also reject Defendants' challenge to the specificity of Plaintiff's Complaint under FED. R. CIV. P. 9(b). (*See* Dkt. 31 at 11–12.) In false advertising cases, the Ninth Circuit has held that a plaintiff need only allege "the basic premise of 'what is false or misleading about a statement, and why it is false'"

Case No. 2:22-cv-03391-SSS (PLAx)         – 2 –

in enough detail to put the defendants on notice of the challenged conduct, so that they have a fair opportunity to respond to the plaintiff's allegations. *Moore*, 966 F.3d at 1020. Because Plaintiff has done that here, and also detailed each Defendant's role in the alleged joint enterprise, the Court should deny Defendants' Motion. (*See infra* Section III.D.)

In addition, the Court should disregard Defendants' misapplication of the "learned intermediary" doctrine, a causal inference that applies only in duty-to-warn cases and makes no logical sense where, as here, a physician is alleged to be acting not as an "intermediary," but as the mastermind behind the manufacturer's and other controlled companies' false advertising. (*See infra* Section III.E.) Finally, because only equity can put an end to Defendants' false advertising and protect Plaintiff, the Class, and the public, the Court should follow the majority rule allowing legal and equitable claims to be brought in the alternative at the pleading stage. (*See infra* Section III.F.) Defendants' Motion should therefore be denied in its entirety.

## II.  STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the Court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016); *see also Eclectic Properties*, 751 F.3d at 996 (holding that "a court should 'assume the[ ] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement to relief'") (citing *Iqbal*, 556 U.S. at 664)*; Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) ("A claim should be dismissed only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted."). "Whether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage." *Moore*, 966 F.3d at 1021.

Case No. 2:22-cv-03391-SSS (PLAx)          – 3 –

## III. ARGUMENT AND AUTHORITIES

### A. Plaintiff has stated a claim for violation of the FAL, UCL, and CLRA because Plaintiff has alleged that Defendants made statements likely to mislead a reasonable consumer.

Plaintiff's false and misleading advertising claims arise under three interrelated statutes. Plaintiff brings a claim under California's False Advertising Law ("FAL"), which makes it illegal to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." CAL. BUS. & PROF. CODE § 17500. Plaintiff also brings a claim under the California CLRA, which forbids false and misleading advertising, including "representing that goods have characteristics, uses, or benefits which they do not have." CAL. CIV. CODE § 1770(a)(5). In addition, Plaintiff brings claims under California's UCL, which prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. The UCL's "unlawful" prong incorporates other state laws and provides an equitable remedy for violations of such laws. *See Tryan*, 2018 WL 3955980, at *5 ("The UCL's reach 'is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.'") (quoting *Cel-Tech Comms. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

Whether an advertisement is deceptive or misleading under these statutes is governed by the "reasonable consumer" test. *Moore*, 966 F.3d at 1017. "California laws 'prohibit "not only advertising which is false, but also advertising which[,] *although true*, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."'" *Moore*, 966 F.3d at 1017 (quoting *Williams*, 552 F.3d at 938). "'[W]hether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer' or motions to dismiss."

Case No. 2:22-cv-03391-SSS (PLAx) – 4 –

*Moore*, 966 F.3d at 1017 (quoting *Williams*, 552 F.3d at 938 (alterations original)); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (holding that "the reasonable consumer standard … raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s]'" (quoting *Williams*, 552 F.3d at 938)).

Here, Plaintiff has pled that the representations on Defendants' websites were both literally false and likely to mislead reasonable consumers. Dr. Elist's website encouraged consumers to "[e]nhance and enlarge the length, girth, and size of your penis" and touted that Penuma "[l]ooks, feels, and functions just like nature intended – just significantly larger." (Dkt. 16 ¶ 49.) IMD's Penuma website similarly advertised "[s]ignificant, permanent enhancements to the penis," and listed as "advantages" that the Penuma implant was purportedly "[n]atural looking" and "[r]eversible." (Dkt. 16 ¶ 51.) Both the drelist.com and penuma.com websites, as well as Gesiva's website and social media, also deliberately misquoted the intended purpose from Penuma's FDA 510k clearance to present a false impression that the FDA had determined that Penuma was safe and effective for cosmetic penile enlargement, marketing it as "the first FDA-cleared penile implant for cosmetic enhancement" and "the first FDA-cleared penile implant for enhancement." (Dkt. 16 ¶¶ 49–51.) A reasonable consumer viewing these advertisements would conclude, as Plaintiff did, that Penuma was safe, effective, and FDA-approved for men with normal, healthy penises who wanted to increase the size of their penises for aesthetic reasons. (*See* Dkt. 16 ¶¶ 23–25.)

In fact, however, as alleged in Plaintiff's First Amended Complaint, "Penuma does not increase the length of patients' flaccid penises, but causes disfigurement and scarring that often leads to a shortening of the erect penis in the majority of cases." (Dkt. 16 ¶ 62.) The scarring also often interferes with normal penis function by reducing sensation in the penis, leading to sexual dysfunction." (*Id.*) "A

Case No. 2:22-cv-03391-SSS (PLAx)               – 5 –

substantial number of men have had to have the Penuma device removed because of such infection and scarring, leading to a loss of sensation in and/or permanent shortening of the penis." (*Id.* ¶ 63.)[2]

The FDA, moreover, has not conducted pre-market approval ("PMA") testing to ensure that Penuma is safe and effective. Instead, Penuma obtained a pre-market "clearance" under Section 510K based on ***Defendants' representation***—not a finding based on any independent FDA testing—that Penuma was "substantially equivalent" to a silicone block used in ear, nose, and throat reconstructive surgeries. (Dkt. 16 ¶ 42.) As FDA regulations dictate, this clearance "does not in any way denote official approval of the device." 21 C.F.R. § 807.97. Even in the context of this testing-free "clearance" based on self-reported similarity with a grandfathered pre-1976 device, Penuma was cleared only for use in the "cosmetic correction of soft tissue deformities." (Dkt. 16 ¶ 43.) A reasonable consumer, knowing these facts, and suffering from no deformity, would not pay $15,000 for surgery likely to leave his healthy, normal penis scarred and permanently shortened.

## 1. Defendants cannot use fine-print disclaimers to avoid the common-sense meaning of their advertising.

Defendants admit making these statements, but attempt to shield themselves from liability with disclaimers and qualifying language in the fine print elsewhere on Dr. Elist's website. (Dkt. 31 at 14.) Running away from the plain import of their own advertising, they contend that vague statements that "results may vary" and

---

[2] Defendants dispute these allegations, contending that complications from Penuma surgery have occurred only in a "small number" of cases and are "usually the result of patient noncompliance." (Dkt. 31 at 6–7, 15–16.) They also continue to rely on Dr. Elist's self-authored study, contending that "the removal rate is only 3%." (Dkt. 31 at 15.) Plaintiff has pled, however, that Dr. Elist's study understates the rate of complications, including those requiring removal. (Dkt. 16 ¶ 37; *see also id.* ¶ 57 (pleading that "the procedure frequently caused side effects requiring removal of the device").) Because Dr. Elist has concealed patient complaints, (*see* Dkt. 16 ¶¶ 36–37), only discovery can show the exact number of removals. On this motion to dismiss, the Court must accept Plaintiff's well-pleaded factual allegations. *Eclectic Properties*, 751 F.3d at 996.

Case No. 2:22-cv-03391-SSS (PLAx)          – 6 –

weasel words like "may" and "potential" are sufficient to warn consumers about the falsity of the prominently featured, slickly illustrated claims that Penuma would give them a larger, natural-feeling penis. (*See* Dkt. 31 at 13–14.) The Court should reject Defendants' backpedaling. First, the disclaimers' insufficiency is clear from the fact that Defendants still—in their brief as well as on the website—continue to repeat misrepresentations that complications requiring removal occur in a "small number" of cases and are "mostly due to patient noncompliance." (Dkt. 31 at 6–8.) Saying that "results may vary" plainly does not inform consumers that, as alleged in Plaintiff's complaint, Penuma "causes disfigurement and scarring that often leads to a shortening of the erect penis in the majority of cases." (Dkt. 16 ¶ 62.)[3]

Even if Defendants' disclaimers were complete and truthful, the Ninth Circuit has consistently held that a fine-print disclaimer which conflicts with a prominent misleading claim does not prevent the prominent claim from being misleading. The Ninth Circuit established this rule in *Williams*, 552 F.3d 934. In *Williams*, Defendant Gerber Products Co. ("Gerber") deceptively marketed "Fruit Juice Snacks" for toddlers with large images of oranges, peaches, strawberries, and cherries on the front of the packages. *Williams*, 552 F.3d at 936. In fact, however, the snacks did not contain any juice from the pictured fruits. *Id.* The snacks were instead sweetened with corn syrup, sugar, and white grape juice from concentrate, which consumers could discern only if they inspected the fine print list of ingredients. *Id.* at 936–37. Just as Defendants here argue that "no reasonable consumer" would have believed that Penuma would always produce a larger, natural feeling penis, (Dkt. 31 at 13), Gerber argued that the fine print ingredient list would prevent its prominent fruit pictures from deceiving a reasonable consumer. *Id.* at 937. The district court granted

---

[3] Nor did Dr. Elist's 15-minute consultation with Plaintiff or the consent form Plaintiff completed cure these defects. (*See* Dkt. 16 ¶ 26 ("At no point did Dr. Elist or his employees inform Mr. Peña that Penuma was not safe and effective or not FDA cleared for cosmetic enlargement of normal penises.")

Gerber's motion to dismiss, but the Court of Appeals disagreed. *Id.* The Ninth Circuit held that "reasonable consumers" should not be expected "to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* at 939. Accordingly, the Ninth Circuit reversed the lower court's decision. *Id.* at 940.

The Ninth Circuit recently reiterated the *Williams* rule in *Moore*, 966 F.3d at 1017. In *Moore*, the plaintiffs purchased pet food marketed as "prescription pet food." *Moore*, 966 F.3d at 1012–13. In fact, the pet food was not legally required to be sold by prescription, but was sold through veterinarians only by private contractual arrangements. *Id.* at 1013. The *Moore* defendants argued that reasonable consumers would not be misled because veterinarians would inform them that the "prescription pet food" was not, in fact, medicine. As in *Williams*, the district court granted a motion to dismiss, but the Ninth Circuit disagreed. Rejecting defendants' arguments, the Court of Appeals found that where "'a back label ingredients list … conflict[s] with, rather than confirm[s], a front label claim,' the plaintiff's claim is not defeated." *Moore*, 966 U.S. at 1017. Rather, the Ninth Circuit applied a "common-sense" test, taking into account that consumers tend to focus on more prominent claims:

> Descriptive brand names require of the consumer "little thought," which can make consumers susceptible to purchasing because "*they won't have the time or interest to read about [the product] on [the] website or back of the box.*
>
> ….
>
> A reasonable consumer being told about "prescription pet food" may be surprised to learn that there are no drugs or controlled ingredient in the pet food by nature of brand names like "Prescription Diet" or an "Rx" symbol on the food packaging.

Case No. 2:22-cv-03391-SSS (PLAx)          – 8 –

RESPONSE TO MOTION TO DISMISS

*Moore*, 966 F.3d at 1018 (emphasis in original) (citing *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 694 (Cal. Ct. App. 2018) and *Williams*, 522 F.3d at 939). The Ninth Circuit therefore reversed the district court. *Id.* at 1022.

Similar to *Williams* and *Moore*, reasonable consumers here would believe Defendants' misleading claims that Penuma would give them a larger, natural-feeling penis and would not take vague qualifications and disclaimers that "results may vary" to undercut the clear message that Defendants intentionally conveyed with their advertisements. *See Miller v. Peter Thomas Roth, LLC*, No.19-cv-00698, 2020 WL 363045, at *2 (N.D. Cal. Jan. 22, 2020) (denying defendant's motion for summary judgment, holding "[s]ubtle qualifications do not overcome the thrust of the ad"); *see also Friedman v. AARP, Inc.*, 855 F.3d 1047, 1054 (9th Cir. 2017) (holding that allegations that defendant had mislabeled a fee as a "royalty" instead of a "commission" were "adequate to establish material misrepresentation supporting Plaintiff's claims"); *Reid*, 780 F.3d at 959 (reversing grant of motion to dismiss in product-labeling case, finding that claim that spread contained "no trans fat" was plausibly alleged to be misleading despite disclosure on ingredient list that the spread contained partially hydrogenated vegetable oil); *Knuttel v. Omaze, Inc.*, No. 21-cv-09034, 2022 WL 1843138, at *8 (C.D. Cal. Feb. 22, 2022) (holding that it was plausible that "a reasonable consumer would be misled by an affirmative misstatement in an advertisement notwithstanding the disclosure of the truth in the fine print of [defendant's] website"); *Padilla v. Whitewave Foods Co.*, No. 18-cv-09327, 2019 WL 4640399, at *11 (C.D. Cal. July 26, 2019) (holding that label accurately listing the weight of the product did not prevent packaging from being misleading); *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413, 2021 WL 1788397, at *10 (N.D. Cal. May 5, 2021) (holding that "a reasonable consumer 'is not expected to pick up the product and examine the fine print on the ingredient list'"

(quoting *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020))).

### 2. Penuma's new 510(k) clearance with different Intended Purpose language does not cure Defendants' years of misrepresentations.

The Court should also not be swayed by Defendants' gambit of belatedly applying for a new 510(k) clearance with a different "Intended Purpose." (*See* Dkt. 31 at 18–19.) After Defendants were sued by a different plaintiff in the Eastern District of California based on their false advertisements of Penuma as "the first FDA-cleared penile implant for cosmetic enhancement,"[4] IMD submitted a new 510(k) Summary in which it described Penuma's "Indications for Use" differently from the indications for which Penuma had previously been cleared. (Dkt. 32-2.) Whereas Penuma had previously been cleared only for the "cosmetic correction of soft tissue deformities," IMD sought clearance for the new intended use of "cosmetic augmentation of the penis … for aesthetic purposes." (*Id.*) Clearly recognizing that their then-current advertising was inconsistent with Penuma's FDA 510(k) clearance, Defendants chose not to change their advertisements, but instead sought a new FDA clearance that would match their advertising. Consistent with Plaintiff's allegations regarding the cursory nature of the 510(k) clearance process, the FDA did not perform any testing of Penuma's safety or effectiveness for cosmetic augmentation of the penis for aesthetic purposes, but granted the clearance based solely on IMD's representations less than two months later. (*See* Dkt. 16 ¶¶ 39–41); *see also Tryan*, 2018 WL 3955980, at *3 ("Section 510(k) clearance is relatively routine and by its terms does not denote any FDA "approval" as to the efficacy of a

---

[4] *See Nance v. International Medical Devices, et al.*, No. 2:21-cv-02281-MCE-KJN (E.D. Cal.). This case was later voluntarily dismissed without prejudice.

Case No. 2:22-cv-03391-SSS (PLAx)          – 10 –

medical device. It requires little information, rarely elicits a negative response from the FDA, and gets processed relatively quickly.")[5]

Regardless of the effect this new 510(k) clearance may or may not have on the claims of men purchasing Penuma after May 13, 2022,[6] it cannot change the fact that for years Defendants misrepresented Penuma as FDA-cleared for "enhancement" when in fact it was cleared only for the correction of "deformities." (Dkt. 16 ¶¶ 3, 31, 38–43.) Defendants defy common sense—and reinforce the unhealthy body images that plague the men they exploit—by arguing that a normal, healthy man is somehow "deformed" if he simply wanted his penis to be larger. (*See* Dkt. 31 at 18.) In the eyes of a reasonable consumer and ordinary English usage, however, "deformed" refers to something that is "distorted or unshapely in form." *Deformed,* MERRIAM-WEBSTER DICTIONARY (2022) (ebook).[7] Synonyms include "distorted, malformed, misshapen, monstrous, and shapeless." *Id.* When used to describe a part of the body, it means "not having the normal or natural shape or form; misshapen." *Deformed*, OXFORD ENGLISH DICTIONARY (2022) (ebook).

Defendants obviously knew that the phrase "soft tissue deformities" was materially different from the purposes for which they were advertising Penuma. That

---

[5] Defendants attempt to contort the new 510(k) clearance into an implied agreement by the FDA that there is no material difference between use to correct a deformity and purely aesthetic cosmetic use. (*See* Dkt. 31 at 4, 18.) The self-serving statement Defendants quote regarding the device having the same intended use, however, is ***not*** an FDA statement, but instead from the "Summary" prepared by IMD itself in its 510(k) clearance application. (*See* Dkt. 32-2 at 7.) As the FDA regulations dictate, 510(k) clearance "does not in any way denote official approval of the device." 21 C.F.R. § 807.97.

[6] While Defendants may argue that their advertisements regarding Penuma's Section 510(k) clearance are literally true after May 13, 2022, those advertisements remain misleading in that they give the impression that 510(k) clearance denotes some kind of official approval of the Penuma device. *See Moore*, 966 F.3d at 1017 "California laws 'prohibit "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public"'"; 21 C.F.R. § 807.97 (FDA regulation prohibiting using Section 510(k) clearance to "create[] an impression of official approval" of a cleared device); *see also infra* Section III.B.

[7] *Available at* https://www.merriam-webster.com/dictionary/deformed (last visited August 30, 2022).

Case No. 2:22-cv-03391-SSS (PLAx)            – 11 –

is why for years they consistently made certain to omit this part of Penuma's 510(k) clearance from their advertisements. (*See* Dkt. 16 ¶ 51.) Even when legal actions threatened Defendants with liability for these false representations, Defendants continued to omit the phrase "soft tissue deformities" from their advertisements until they could obtain a new clearance with different language. Presumably they did so because they knew that reasonable consumers with normal, healthy penises would not undergo the Penuma implant procedure if it were advertised as FDA-cleared only for treatment of "deformities." Indeed, by applying for a new 510(k) clearance with different "Intended Purpose" language, Defendants implicitly admitted that their previous advertisements—representing Penuma as cleared for purely cosmetic enhancement when it had not been—were literally false. As the Ninth Circuit has held, in FAL/UCL/CLRA false advertising cases "there is no protection for literal falseness." *Moore*, 966 F.3d at 1017 (citing *Brady*, 237 Cal. Rptr. 3d at 692).

In addition to being literally false, Defendants' advertising was misleading in that it repeatedly referenced "FDA clearance" to give the false impression that the FDA had tested Penuma for safety and effectiveness. On this point, the *Tryan* case is instructive. In *Tryan*, unlike here, the defendant's FDA-clearance advertising claims were literally true. *Id*. The district court nevertheless denied a motion to dismiss, finding that advertising a medical device as "FDA cleared" "without any attempt to 'clarify, explain, or even attempt to inform consumers that "FDA clearance" is not equivalent to the widely known and understood "FDA approval"'" could be misleading to consumers. *Tryan*, 2018 WL 3955980, at *6–7. As in *Tryan* and *Williams,* Plaintiff here has pled that Defendants' advertising was false and misleading to reasonable consumers, and the facts of this case "do not amount to the rare situation in which granting a motion to dismiss is appropriate." *Williams*, 52 F.3d at 939 (reversing district court dismissal of FAL, UCL, and CLRA claims

holding that whether product claims were likely to deceive a reasonable consumer was a fact question).

## B. Plaintiff has also stated a UCL claim based on Defendants' California Health & Safety Code violations.

In addition to stating a UCL claim based on Defendants' FAL and CLRA violations (*see supra* Section III.A), Plaintiff has also stated a UCL claim on the independent basis that Defendants violated the California Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"), CAL. HEALTH & SAFETY CODE §§ 109875 et seq. The Sherman Law provides that "[i]t is unlawful for any person to disseminate any false advertisement of any food, drug, device, or cosmetic. An advertisement is false if it is false or misleading in any particular." CAL. HEALTH & SAFETY CODE § 110390. Thus, for all the reasons stated above regarding the FAL and CLRA (*see supra* Section III.A), Defendants' false and misleading Penuma advertisements also violate the Sherman Law.

The Sherman Law also incorporates federal medical device premarket approval regulations into California state law, providing that: "[a]ll regulations relating to … applications for premarket approval of new devices, adopted pursuant to [the FDCA] shall be the new drug and new device application regulations of this state." CAL. HEALTH & SAFETY CODE § 110110(a). Here, Plaintiff has pled that Defendants violated federal regulations incorporated into the Sherman Law by "misbranding" the Penuma device in their advertisements. The FDCA prohibits "[t]he adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce." 21 U.S.C. § 331. FDA regulations further specify that using a Section 510(k) clearance to "create[] an impression of official approval" of a device "constitutes misbranding":

> Submission of a premarket notification in accordance with this subpart, and a subsequent determination by the Commissioner that the device intended for introduction into commercial distribution is substantially equivalent to

Case No. 2:22-cv-03391-SSS (PLAx)          – 13 –

a device in commercial distribution before May 28, 1976, or is substantially equivalent to a device introduced into commercial distribution after May 28, 1976, that has subsequently been reclassified into class I or II, ***does not in any way denote official approval of the device***. Any representation that creates an impression of official approval of a device because of complying with the premarket notification regulations ***is misleading and constitutes misbranding***.

21 C.F.R. § 807.97. Plaintiff has pled that Defendants' advertisements created exactly such an impression of official approval. Over and over again, Defendants touted Penuma as "the first FDA-cleared penile implant for cosmetic enhancement," (Dkt. 16 ¶ 49), "FDA-cleared for cosmetic enhancement," (*id.* ¶ 50), and "the first 510(k)-cleared penile implant for cosmetic enhancement." (*Id.* ¶ 51.) Plaintiff has pled that he reasonably believed, based on these advertisements, "that the Penuma device had been approved by the FDA, and this belief gave him a sense of comfort that the device was safe and effective." (*Id.* ¶ 23.) For this independent reason, the Court should deny Defendants' motion to dismiss Plaintiff's UCL claim. *See Tryan*, 2018 WL 3955980, at *5 (denying motion to dismiss state-law claims based on FDCA violations incorporated into the Sherman Law where plaintiff alleged "that Defendant misrepresented that [its medical device] had FDA approval, or gave the impression that the system had such approval in order to assure consumers it was safe and effective").

## C. Plaintiff has also stated a claim for violation of the CLRA and UCL based on Defendants' omissions of material facts.

In addition to stating a claim for violation of the CLRA/UCL based on affirmative misrepresentations, (*see supra* Section III.A), Plaintiff has also stated a CLRA/UCL claim based on Defendants' omissions of material facts from their advertisements. Namely, Defendants failed to disclose that "Penuma's design results in patients' erect penises becoming shorter in most cases and in many cases disfigured." (Dkt. 16 ¶ 36.) Defendants further failed to disclose patient complaints

Case No. 2:22-cv-03391-SSS (PLAx)          – 14 –

regarding complications, instead directing consumers to a self-serving, self-authored, and unscientific study that understated the frequency of "'long-term sequalae of such adverse events and implant removal, such as penile shortening, fibrosis, and sexual dysfunction." (*Id.* ¶ 37 (citing Hehemann, *Penile Girth Enlargement Strategies: What's the Evidence?*, 7 SEXUAL MEDICINE REVIEW 535–547, 542 (2019).) In addition, Defendants failed to disclose that, at all times relevant to the complaint, Penuma was FDA-cleared only for use in the cosmetic correction of soft tissue deformities. (Dkt. 16 at 12.) Contrary to Defendants' argument, (*see* Dkt. 31 at 19), much of the information regarding the rate of Penuma complications is not publicly available because Dr. Elist does not disclose patient complaints, instead using his flawed self-authored study to mislead consumers and the public. (Dkt. 16 ¶ 37.)

An omission is actionable under the CLRA if the omitted fact is (1) "contrary to a [material] representation actually made by the defendant" or (2) is "a fact the defendant was obliged to disclose." *Gutierrez v. Carmax Auto Superstores California*, 248 Cal. Rptr. 3d 61, 84 (Cal. Ct. App. 2018). "There are 'four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997) (citing *Heliotis v. Schuman*, 226 Cal.Rptr. 509, 512 (Cal. Ct. App. 1986)). "[I]n order for non-disclosed information to be material, a plaintiff must show that 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 939 (C.D. Cal.

2012) (citing *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008)).

Here, Plaintiff has pled that Defendants had a duty to disclose because they made partial representations, advertising that Penuma was "FDA cleared" and that it would "enlarge the length, girth, and size of your penis," (Dkt. 49), while omitting material facts including the high rates of complications and the fact that Penuma's vaunted "FDA clearance" was only for "cosmetic correction of soft tissue deformities" and did not denote the FDA's official approval of the device. (*See* Dkt. 16 ¶¶ 37, 48); 21 C.F.R. § 807.97. These omissions are material because, if Plaintiff and other reasonable consumers had known the concealed information, they would not have purchased the Penuma device and procedure. (Dkt. 16 ¶¶ 23–25, 98.) In their Motion to Dismiss, Defendants acknowledge that a partial representation is actionable when the defendant withholds qualifying information in a way that makes the representation misleading. (Dkt. 31 at 20.) Offering no new arguments, Defendants only incorporate by reference their previous contentions that fine-print disclaimers in their websites negate the effect of their prominent advertising claims. (*Id.*; *see also id.* at 13–14.) As set forth above, however, fine print disclaimers are not sufficient under California law to defeat the inference that consumers reasonably relied on the common-sense meaning of a defendant's advertisements. (*See supra* Section III.A.1.) Plaintiff's pleadings are therefore sufficient to state a CLRA/UCL claim on the basis that Defendants omitted and failed to disclose material information. *Keegan*, 838 F. Supp. 2d at 944 (holding that plaintiffs had "sufficiently pled a material failure to disclose for purposes of the CLRA and UCL" where it was plausible that defendant automobile manufacturer had failed to disclose material safety defects). For that independent reason also, Defendants' Motion to Dismiss should be denied.

**D. Plaintiff's allegations are sufficiently detailed to put Defendants on notice of the challenged conduct.**

The purpose of the federal pleading rules, under either Rule 8(a) or Rule 9(b), is to put defendants on notice of the challenged conduct, so that they have a fair opportunity to respond to the plaintiff's allegations.[8] *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (holding that under Rule 8, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"); *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) ("To comply with Rule 9(b), allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'") (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). As the Ninth Circuit held in *Moore*, a false advertising plaintiff meets this standard by "alleging the basic premise of 'what is false or misleading about a statement, and why it is false.'" *Moore*, 966 F.3d at 1020 (holding that "Plaintiffs have pleaded sufficient detail to put Defendants on notice as to the fraud claim" where the "complaint satisfies the Rule 9(b) heightened pleading standard in alleging the basic premise of 'what is false or misleading about a statement, and why it is false'").

**1. Plaintiff has identified the advertisements he saw and explained why they were misleading.**

Plaintiff here alleges that he saw an advertisement for Penuma on Dr. Elist's website before his appointment with Dr. Elist in October of 2020. (Dkt. 16 ¶¶ 22,

---

[8] The Ninth Circuit has noted that false advertising claims under the FAL/UCL/CLRA may not be subject to the heightened pleading requirements of Rule 9(b). *See Moore*, 966 F.3d at 1019 n.11 ("Rule 9(b) requirements may not even be necessary, given that a defendant can violate the UCL, FAL, and CLRA by acting with mere negligence.") Because Plaintiff's pleadings here are sufficient to put Defendants on notice of the challenged conduct under either standard, the difference between the two pleading standards is not material.

Case No. 2:22-cv-03391-SSS (PLAx)        – 17 –

26); *see Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (holding that "when" and "where" requirements of Rule 9(b) in pet food false advertising case were met where the plaintiff alleged he "saw marketing materials for Prescription Diet pet food before purchasing the cat food at PetsMart in February 2013 and thereafter" and explaining that "[n]othing more is needed"). Plaintiff's complaint includes a screenshot of this advertisement. (Dkt. 16 ¶ 49.) In addition, the Complaint details that the statement "Enhance and enlarge the length, girth, and size of your penis," is misleading because Penuma "is not effective to enhance the appearance of normal penises." (Dkt. 16 ¶ 52.) Plaintiff further alleges that the statement "Looks, feels, and functions just like nature intended – just significantly larger," is misleading because Penuma "frequently causes complications that require the implant to be removed, causing permanent damage to the penis." (*Id.*) Finally, Plaintiff alleges that the statement on Dr. Elist's website that Penuma is "the first FDA-cleared penile implant for cosmetic enhancement" is false and misleading because Penuma's FDA clearance was limited to "use in the cosmetic correction of soft tissue deformities." (*Id.* ¶¶ 49, 52.) This pleading is more than sufficient to put Defendants on notice of Plaintiff's fraud claim. *See Culver v. Unilever United States, Inc.*, No. 19-cv-9263, 2021 WL 2943937, at *6 (C.D. Cal. June 14, 2021) (holding that FAL/UCL/CLRA claims were pled with sufficient particularity where plaintiff identified the month when and location where he purchased defendant's products and explained how the product labels were misleading); *Maisel*, 2021 WL 1788397, at *8 (denying motion to dismiss under Rule 9(b) and holding that plaintiff "pleads her UCL, FAL, and CLRA causes of action with sufficient particularity to place [defendant] on notice of the circumstances constituting the alleged fraud" where she pled when and where she purchased the product and "'set[s] forth what is false or misleading about a statement, and why it is false'" (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)); *Tryan*, 2018 WL 3955980, at *8

Case No. 2:22-cv-03391-SSS (PLAx)          – 18 –

(holding that plaintiffs "more than adequately identified the basis for their fraud-based claims such that Defendant can adequately respond to those claims" where plaintiffs "allege that prior to purchasing [defendant's medical device] they 'saw, and relied upon, Defendants' advertising materials … and specifically relied on representations that [the device] was 'FDA approved'").

Indeed, as in *Moore*, Defendants here demonstrated that they were on notice regarding the specific advertisements Plaintiff challenges because they filed a Request for Judicial Notice attaching these advertisements and discussed extensively in their brief why they believed the advertisements would not mislead a reasonable consumer.[9] (*See* Dkt. 31 at 12–14); *see Moore*, 966 F.3d at 1020 ("The fact that Plaintiffs placed Defendants on sufficient notice to respond to the alleged fraud reflects how their allegations meet Rule 9(b).") This case is thus not like the cases Defendants rely on. (*See* Dkt. 31 at 11.) For example, in the *Kearns* case, the plaintiff alleged that he was misled by advertising but did not specify what the "advertisements or other sales material specifically stated" or identify the person who he claimed made misleading oral statements to him. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Similarly in *Gutierrez*, the plaintiffs did "not allege the specific content of the advertisements they viewed." *Gutierrez v. Johnson & Johnson Consumer Inc.*, No. 16-cv-1345, 2021 WL 822721, at *4 (S.D. Cal. Jan. 22, 2021); *see also Herrera v. Estee Lauder Companies, Inc.*, No. 12-cv-01169, 2012 WL 12507876, at *4 (C.D. Cal. Sept. 20, 2012) (dismissing with leave to amend where plaintiffs did not "plead what the advertising materials specifically state" and "also point to no particular advertisements or promotional materials that

---

[9] As set forth in Plaintiff's Response to the Request for Judicial Notice, filed contemporaneously herewith, these materials are not subject to Judicial Notice, because they are outside the Complaint. Nevertheless, the fact that Defendants were able to readily identify the advertisements at issue belies any contention that Plaintiff's allegations failed to put them on notice of the challenged conduct.

Case No. 2:22-cv-03391-SSS (PLAx)          – 19 –

they were personally exposed to"); *Thornton v. Micro-Star Int'l Co.*, No. 17-cv-03231, 2017 WL 10621210, at *7 (C.D. Cal. 2017) (dismissing with leave to amend where plaintiff did not identify the websites and documentation where they saw the alleged misrepresentations). Plaintiff has pled his false advertising claims with the required specificity.

### 2. Plaintiff has adequately alleged a joint enterprise and each Defendant's role in the alleged enterprise.

Plaintiff alleges that Defendants participated in a joint enterprise because they "shared a common plan or design for illegally marketing the Penuma device and procedure for cosmetic enlargement of normal penises." (Dkt. 16 ¶ 16.) "[W]here two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (citing RESTATEMENT (SECOND) OF TORTS § 491 cmt. b). In support of his joint enterprise allegations, Plaintiff has pled that each Defendant "agreed to market Penuma for the cosmetic enlargement of normal penises." (Dkt. 16 ¶ 17.) Plaintiff has further alleged that Dr. Elist, sued both as an individual and as his own Medical Corporation, owns 100% of Defendants IMD and Menova, meaning that Dr. Elist, IMD, and Menova share 100% of profits and losses and that IMD and Menova are subject to joint control by Dr. Elist. (Dkt. 16 ¶¶ 33–34); *see Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1173 (9th Cir. 2022) (recognizing that agreement, sharing of profits, and joint control show a joint venture under California law). Dr. Elist's son, Jonathan Elist, is IMD's chief executive officer and registered agent, and IMD shares his address. (Dkt. 16 ¶¶ 6, 33.) Dr. Elist himself is the registered agent for Menova and shares its address. (Dkt. 16 ¶ 7.) Accepting these allegations as true, it is more than plausible that Defendants operated a joint enterprise. *See FTC v. QYK Brands LLC*, No. 20-cv-01431, 2022 WL 1090257, at *2 (C.D. Cal. Apr. 6, 2022)

(parties stipulated to joint and several liability where defendants "own and operate several businesses" and "run these businesses as a tight-knit, joint enterprise that shares employees and office locations").

Regarding Gesiva, Plaintiff has pled that Gesiva also entered into Defendants' joint agreement to market Penuma for the cosmetic enlargement of normal penises and acted as part of the joint enterprise." (Dkt. 16 ¶ 18.) Plaintiff has also directly quoted language from Gesiva's website, as well reproducing a promotional Twitter post by Gesiva, in which Gesiva uses exactly the same misleading language as appears on Dr. Elist's website and on IMD's Penuma website. (Dkt. 16 ¶¶ 50, 51 at 14.) Tellingly, Gesiva's Twitter post also uses the first-person plural pronoun "Us" to refer to Gesiva and Penuma collectively, describing Penuma in an "About Us" section and referring to surgeons who perform the Penuma procedure as "Our surgeons." (*Id*.)

Consistent with the Federal Rules' intent to put defendants on notice of the allegations against them, Rule 9(b) requires only that a plaintiff "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Drake v. Toyota Motor Corp*., No. 20-cv-01421, 2020 WL 7040125, at *10 (C.D. Cal. Nov. 23, 2020); *see also Morris v. Sun Pharma Global Inc.*, No. 20-cv-10441, 2021 WL 3913191, at *3 (C.D. Cal. May 13, 2021) (disallowing allegations which "make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations"). Plaintiff has done that here. First, Plaintiff has specified exactly which false and misleading advertisements were made on Dr. Elist's website, which on IMD's Penuma website, and which on Gesiva's website and social media. (Dkt. 16 ¶¶ 49–51.) Thus, this case is not like the *Destfino* case cited by Defendants, in which the plaintiff "failed to 'set out which of the defendants made which of the fraudulent statements/conduct.'" *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). Second, Plaintiff has detailed each Defendant's role in the alleged joint

enterprise: Plaintiff specifies that IMD is responsible for manufacturing and selling the Penuma device, as well as applying for Penuma's FDA clearances, (Dkt. 16 ¶¶ 42–42, 60); Plaintiff specifies that Menova owns the intellectual property associated with Penuma, (*id.* ¶¶ 34–35); Plaintiff specifies that Dr. Elist invented the Penuma device, created and controlled IMD and Menova, and performs Penuma surgeries, (*id.* ¶¶ 31–34, 61 ); and Plaintiff specifies that Gesiva distributes the Penuma device to surgeons around the United States. (*Id.* ¶ 35.)

As the Federal Circuit explained in *Akamai*, "whether actors entered into a joint enterprise is a question of fact." *Akamai*, 797 F.3d at 1023 ("As with direction or control, whether actors entered into a joint enterprise is a question of fact, reviewable on appeal for substantial evidence.") Indeed, the *only* case Defendants cite on the joint enterprise issue is a summary judgment case, in which the plaintiffs had already had an opportunity to conduct discovery regarding their joint enterprise allegations. (*See* Dkt. 31 at 12); *Ratha*, 35 F.4th at 1166–67 (district court granted summary judgment after discovery on joint venture allegations). This Court should therefore decline Defendants' invitation to prematurely rule on fact questions. Because Plaintiff has alleged his claims specifically enough to give Defendants a fair opportunity to respond, the Motion to Dismiss should be denied. *Moore*, 996 F.3d at 1020.

**E. The "learned intermediary doctrine" does not apply to this case.**

The Court should also reject Defendants' attempt to interject the "learned intermediary doctrine"—a specialized causal interference applicable only where physicians serve as "intermediaries" between device manufacturers and patients. (*See* Dkt. 16 at 21–22.) As an initial matter, Dr. Elist could in no way serve as an "intermediary" breaking the chain of influence between IMD's and Gesiva's advertising and consumers, because Elist himself controlled and directed that advertising. (Dkt. 16 ¶¶ 17, 49–51.) Where, as here, the physician is not an

Case No. 2:22-cv-03391-SSS (PLAx)          – 22 –

"intermediary" but the architect of the alleged misleading advertising scheme, the learned intermediary doctrine has no place. In any case, as even Defendants' authorities acknowledge, the doctrine applies only in duty-to-warn cases. *See Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1144–45 (S.D. Cal. 2016) (finding that doctrine does not apply outside of duty-to-warn actions); *see also Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001) (learned intermediary doctrine applies to "causes of action based on a failure to warn"); *Saavedra v. Eli Lilly & Co.*, No. 2:12–cv–9366, 2013 WL 3148923, at *3 (C.D. Cal. June 13, 2013) (learned intermediary doctrine applies claims predicated on a failure to warn). It does not apply where, as here, a manufacturer and distributor undertook a deliberate campaign to mislead consumers. *See City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 688–89 (N.D. Cal. 2020) (rejecting causal inference of the learned intermediary doctrine where plaintiffs alleged that drug manufacturer undertook deliberate marketing campaign to mislead physicians and patients).

### F. This Court should deny Defendants' motion to dismiss Plaintiff's claims for equitable relief.

Defendants' attack on Plaintiff's equitable claims is equally unavailing. In false advertising cases like this one, it is common practice for courts to entertain FAL, CLRA, and UCL claims together. *See Moore*, 966 F.3d at 1015–16 (reversing denial of motion to dismiss FAL, UCL, and CLRA claims); *Kang v. P.F. Chang's China Bistro*, 844 Fed. App'x 969, 971 (9th Cir. 2021) (same); *Williams*, 552 F.3d at 938–39 (same); *Reid*, 780 F.3d at 967 (same); *Kim v. Benihana, Inc.*, No. 19-cv-02196, 2021 WL 1593248, at *5 (C.D. Cal. Feb. 24, 2021) (denying motion to dismiss FAL, UCL, and CLRA claims); *Padilla*, 2019 WL 4640399, at *12 (same); *Ruiz v. Celsius Holdings*, No. 21-cv-00128, 2021 WL 5811264, at *8 (S.D. Cal. July 28, 2021) (same). Defendants nevertheless raise a novel argument that plaintiffs

should be forced to elect between legal (CLRA) and equitable (UCL) remedies when they initially file their complaints. (*See* Dkt. 31 at 23–24.)

Defendants base their unusual pleading challenge principally on a case decided not at the motion-to-dismiss stage, however, but "[o]n the brink of trial after more than four years of litigation." *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Although Defendants cite the *Klaehn* case as applying *Sonner* at the pleading stage, (*see* Dkt. 31 at 31), *Klaehn* actually recognized that the plaintiff's UCL claims "rise or fall with their CLRA claims" and found only that the plaintiffs had waived the argument that they lacked adequate legal remedies because they "did not attempt[] to address the district court's finding about the inadequacy of their allegations." *Klaehn v. Cali Bamboo, LLC*, No. 21-cv-55738, 2022 WL 1830685, at *2–3 (9th Cir. June 3, 2022). Here, Plaintiff has alleged that in addition to damages for past harm, injunctive relief is required to protect Plaintiff and the Class members from future harm. (Dkt. 16 ¶ 115.) Plaintiff's pleading that he would consider purchasing a Penuma product in the future gives him standing to pursue injunctive relief on behalf of the Class. (Dkt. 16 ¶ 69); *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (holding that plaintiff "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on [defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief"); *Maisel*, 2021 WL 1788397, at *6 (denying motion to dismiss injunctive relief claims where the plaintiff alleged "that if the products' ingredients were as represented, she 'would like to purchase the Products again in the future'"). Plaintiff's standing to pursue injunctive relief and protect not only himself, but other consumers, is consistent with the UCL's purpose. As the California Supreme Court has "repeatedly recognized the importance of," the UCL serves to "protect the public" from illegal conduct:

> Through the UCL a plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices in

order to protect the public and restore to the parties in interest money or property taken by means of unfair competition. These actions supplement the efforts of law enforcement and regulatory agencies. *This court has repeatedly recognized the importance of these private enforcement efforts.*

*In re Tobacco II Cases*, 207 P.3d 20, 30 (Cal. 2009) (emphasis added).

Instead of adopting Defendants' proposed new rule against bringing FAL, UCL, and CLRA claims in the alternative, this Court should follow *Maisel*, 2021 WL 1788397, at \*10. Faced with the same argument Defendants make here, seeking to dismiss the plaintiff's equitable claims in a false advertising case, the *Maisel* court denied the motion "follow[ing] other courts in this district that find no bar to the pursuit of alternative remedies at the pleadings stage." *Maisel*, 2021 WL 1788397, at \*12 (citing *Arora v. GNC Holdings, Inc.*, 2019 WL 6050750, at \*13 (N.D. Cal. Nov. 15, 2019); *Madani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 3753433, at \*9 (N.D. Cal. Aug. 8, 2019); *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at \* 7 (N.D. Cal. May 2, 2018); *Aberin v. Am. Honda Motor Co., Inc.*, 2018 WL 1473085, at \*9 (N.D. Cal. Mar. 26, 2018); *Adkins v. Comcast Corp.*, 2017 WL 3491973, at \*3 (N.D. Cal. Aug. 1, 2017)). This court should reach the same result.

## IV.  CONCLUSION

Because telling consumers that "results may vary," does not inform them that Penuma "causes disfigurement and scarring that often leads to a shortening of the erect penis in the majority of cases," (Dkt. 16 ¶ 62), this Court should deny Defendants' Motion to Dismiss.[10]

---

[10] Should the Court determine to grant Defendants' motion in any part, the Court should grant Plaintiff leave to amend to correct any defects in the Complaint. *See Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (noting that where a motion to dismiss is granted, a district court should grant leave to amend unless it is clear the complaint cannot be saved by amendment).

Dated: September 6, 2022          Respectfully submitted,


                                  By: */s/ Michael A. Caddell*
                                      Michael A. Caddell (SBN 249469)
                                      mac@caddellchapman.com
                                      Cynthia B. Chapman (SBN 164471)
                                      cbc@caddellchapman.com
                                      Amy E. Tabor (SBN 297660)
                                      aet@caddellchapman.com
                                      CADDELL & CHAPMAN
                                      P.O. Box 1311
                                      Monterey CA 93942
                                      Tel.: (713) 751-0400
                                      Fax: (713) 751-0906

                                      *Attorneys for Plaintiff*