Amir M. Nassihi (SBN: 235936)
anassihi@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street Suite 2300
San Francisco, California 94105
Telephone:   (415) 544-1900
Facsimile:    (415) 391-0281

Michael L. Mallow (SBN: 188745)
mmallow@shb.com
Mayela C. Montenegro-Urch (SBN: 304471)
mmontenegro@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, California 90067
Telephone:  (424) 285-8330
Facsimile:   (424) 204-9093

*[Additional Counsel on Signature Page]*

Attorneys for Defendants
INTERNATIONAL MEDICAL DEVICES, INC.,
MENOVA INTERNATIONAL, INC., GESIVA
MEDICAL, LLC, JAMES J. ELIST, M.D., A
MEDICAL CORPORATION, and DR. JAMES ELIST

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| EDWARD PEÑA, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL MEDICAL DEVICES, INC., MENOVA INTERNATIONAL, INC., GESIVA MEDICAL, LLC, JAMES J. ELIST M. D., a Medical Corporation, and Dr. James ELIST <br><br> Defendants. | Case No. 2:22-cv-03391-SSS (PLAx) <br><br> Judge: Hon. Sunshine S. Sykes <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS EQUITABLE CLAIMS IN SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [Filed concurrently with [Proposed] Order] <br><br> Date:  April 14, 2023 <br> Time: 2:00 p.m. <br> Ctrm: 2 (via Zoom video conference) <br><br> Complaint Filed: May 25, 2022 <br> First Am. Compl. Filed: June 15, 2022 <br> Second Am. Compl. Filed: Jan. 20, 2023 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 14, 2023, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Sunshine S. Sykes via Zoom video conference in Courtroom 2 of the United States Courthouse located at 3470 Twelfth Street, Riverside, California 92501, Defendants International Medical Devices, Inc. ("IMD"), Menova International, Inc., Gesiva Medical, LLC, James. J. Elist M.D., A Medical Corporation, and Dr. James Elist (collectively, "Defendants") will move the Court for an order dismissing the equitable claims in Plaintiff Edward Peña's Second Amended Complaint ("SAC"). This motion is made pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

The equitable claims in Peña's SAC should be dismissed because he has not pleaded facts showing that he lacks an adequate legal remedy. Peña's claim for injunctive relief fails for the additional reason that he has not plausibly alleged that he is likely to suffer a repeated injury.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the pleadings and documents on file in this action, and such argument as may be presented at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 27, 2023.

Dated:  February 3, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:   /s/ *Amir M. Nassihi*

Amir M. Nassihi
Michael L. Mallow
Jennifer M. Stevenson
Mayela C. Montenegro-Urch

ii

Jennifer M. Stevenson (admitted *pro hac vice*)
jstevenson@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone:   (816) 474-6550
Facsimile:   (816) 421-5547

Attorneys for Defendants
INTERNATIONAL MEDICAL DEVICES, INC., MENOVA INTERNATIONAL, INC., GESIVA MEDICAL, LLC, JAMES J. ELIST M.D., a Medical Corporation, and DR. JAMES ELIST

iii

# **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

FACTUAL BACKGROUND.................................................................................2

      A.    History of the Penuma implant .................................................2

      B.    Peña's claims and experience with the Penuma implant .....................3

PROCEDURAL BACKGROUND ..........................................................................5

ARGUMENT ........................................................................................................5

I.    The Court should dismiss Plaintiff's claims for equitable relief....................5

      A.    Plaintiff has not pleaded the lack of an adequate legal remedy............5

      B.    Plaintiff lacks standing to seek injunctive relief. .................................8

CONCLUSION....................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Adams v. Cole Haan, LLC*,
2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ......................................................... 8

*Archer v. Carnival Corp.*,
2020 WL 9264981 (C.D. Cal. Sept. 22, 2020) ....................................................... 9

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ................................................................................. 8

*Chapman v. Pier 1 Imports (U.S) Inc.*,
631 F.3d 939 (9th Cir. 2011) ................................................................................. 8

*Clark v. Am. Honda Motor Co.*,
528 F. Supp. 3d 1108 (C.D. Cal. 2021) .............................................................. 6, 7

*Clevenger v. Welch Foods Inc.*,
2022 WL 18228288 (C.D. Cal. Dec. 14, 2022) ...................................................... 6

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ............................................................................... 10

*Drake v. Toyota Motor Co.*,
2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ....................................................... 7

*Gibson v. Jaguar Land Rover N. Am., LLC*,
2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ..................................................... 6, 8

*Goldstein v. Gen. Motors LLC*,
517 F. Supp. 3d 1076 (S.D. Cal. 2021) ................................................................. 7

*Henderson v. J.M. Smucker Co.*,
2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ....................................................... 7

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) ............................................................................. 11

*Hoffman v. Ford Motor Co.*,
2021 WL 3265010 (C.D. Cal. Mar. 31, 2021) ..................................................... 11

*In re Coca-Cola Prods. Mktg. and Sales Pract. Litig.*,
2021 WL 3878654 (9th Cir. Aug. 31, 2021) ....................................................... 10

*Klaehn v. Cali Bamboo LLC*,
2022 WL 1830685 (9th Cir. June 3, 2022).................................................................5

*Lanovaz v. Twinings N. Am., Inc.*,
726 F. App'x 590 (9th Cir. 2018)...........................................................................10

*Lisner v. Sparc Grp. LLC*,
2021 WL 6284158 (C.D. Cal. Dec. 29, 2021)..........................................................6

*Loomis v. Slendertone Distrib., Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019) ...................................................................9

*Mack v. LLR, Inc.*,
2018 WL 6927860 (C.D. Cal. Aug. 15, 2018)..........................................................6

*Madrigal v. Hint, Inc.*,
2017 WL 6940534 (C.D. Cal. Dec. 14, 2017)...........................................................6

*PDF Print Commc'ns Inc. v. Federated Mut. Ins. Co.*,
2022 WL 2189631 (C.D. Cal. Mar. 29, 2022) .........................................................8

*Rodriguez v. Just Brands USA, Inc.*,
2021 WL 1985031 (C.D. Cal. May 18, 2021)...........................................................7

*Ruan v. United States*,
831 F. App'x 797 (9th Cir. 2020)..........................................................................11

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........................................................................ 1, 5, 6

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)............................................................................................8, 9

**Statutes**

21 U.S.C. § 360c ......................................................................................................2

Consumers Legal Remedies Act, Cal. Civ. Code § 1750.........................................4

False Advertising Law, Cal. Bus. & Prof. Code § 17500 ..............................*passim*

Federal Food, Drug, and Cosmetic Act section 510(k) ...........................................2

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...........................*passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 11

**Other Authorities**

21 C.F.R. § 807.92 ................................................................................................. 2

21 C.F.R. § 807.100(b) ................................................................................... 2, 3, 4

FDA letter to IMD, dated May 13, 2022, *available at*
    https://www.accessdata.fda.gov/cdrh_docs/pdf22/K220760.pdf ........................... 11

vii

# INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Edward Peña's Second Amended Complaint does not cure the significant deficiencies in his claims for equitable relief. This Court previously dismissed Peña's equitable claims (with leave to amend) because (1) he failed to plead that his legal remedy for damages was inadequate; and (2) he failed to show that he faced a real and immediate threat of repeated injury. Dismissal is again appropriate for two reasons.

*First*, Peña has not pleaded that his legal remedy is inadequate, as required by the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-44 (9th Cir. 2020). Nor can he do so. The refund Peña seeks is recoverable as damages in his legal cause of action. As a result, there is no need to bring equitable claims for restitution or disgorgement, which, by law, would be limited to the amount Peña paid for the Penuma implant and procedure anyway. Peña also has not shown that damages would be an inadequate remedy for any economic injury resulting from a future purchase of the Penuma implant and procedure—a purchase that would never occur as explained below.

*Second*, the Court found that Peña did not demonstrate a threat of future injury that was "certainly impending" as required by Article III for injunctive relief because he alleged only that there was a "possibility" he would buy the Penuma implant and procedure in the future. Dkt. 50 at 12. Rather than cure this problem, the Second Amended Complaint compounds it by making multiple inconsistent and contradictory allegations as to Peña's future intentions. Moreover, Peña is now aware that FDA has cleared the Penuma implant for cosmetic enhancement and aware of the potential complications of this type of surgery, having allegedly experienced it. Armed with this knowledge, it is not possible for Peña to claim to be deceived in the same manner and suffer the same injury again.

Accordingly, the Court should dismiss Peña's equitable claims.

## FACTUAL BACKGROUND

### A.    History of the Penuma implant

In 2004, National Medical Devices, Inc., the predecessor to IMD, applied for and received clearance from the U.S. Food and Drug Administration ("FDA") pursuant to section 510(k) of the Federal Food, Drug, and Cosmetic Act ("FDCA") to market the initial version of the Penuma. SAC ¶ 42. Before FDA clears a device for commercial distribution under section 510(k), an applicant must submit a premarket notification to FDA demonstrating that the device is "substantially equivalent" to a legally marketed device, which FDA then reviews and must clear prior to commercialization. 21 C.F.R. §§ 807.92, 807.100. "Substantial equivalence" means FDA has concluded the device has the same intended use as the predicate device and has either the same technological characteristics as the predicate device, or if it has different technological characteristics, the information submitted demonstrates that *the device is as safe and effective as the predicate device* and does not raise different questions of safety and effectiveness than the predicate device. 21 C.F.R. § 807.100(b) (emphasis added).[1]

National Medical Devices, Inc. submitted its premarket notification for a "Silicone Block" in 2004 on the basis that the device was substantially equivalent to an "ear, nose, and throat synthetic polymer material" used as a "space-occupying substance in the reconstructive surgery of the head and neck." SAC ¶ 42. FDA granted clearance to market the device "for use in the cosmetic correction of soft tissue deformities, [] contoured at the surgeon's discretion to create a custom implant to aid in the reconstruction process." *Id.*

---

[1] The Penuma is a Class II medical device. SAC ¶ 42. Devices that support or sustain human life, are of substantial importance in preventing impairment of human health, or which present a potential unreasonable risk of illness or injury are designated Class III medical devices and are subject to the premarket approval (PMA) process. 21 U.S.C. § 360c(a)(1)(C). In other words, per federal law, Penuma does not qualify for FDA's PMA process.

2

IMD submitted a second premarket notification in 2016 for a "Pre-Formed Penile Silicone Block," relying on the previously cleared Silicone Block as the predicate device. SAC ¶ 43. FDA's Division of Reproductive, Gastro-Renal, and Urological Devices cleared the device for marketing for the indicated use of "cosmetic correction of soft tissue deformities, [] contoured at the surgeon's discretion to create a custom implant." *Id.* IMD made design changes and submitted another premarket notification in 2018, and again received FDA clearance to market the device for this same use. *Id.*

In their motion to dismiss Peña's First Amended Complaint, Defendants advised Peña of the most recent 510(k) submission IMD made regarding the Penuma that was cleared by FDA. Specifically, on March 15, 2022, IMD made a 510(k) submission, stating that the Penuma was "intended for use in augmentation, reconstructive, and cosmetic surgery, and is contoured at the surgeon's discretion to create a custom implant. When used in augmentation procedures, the device provides cosmetic augmentation of the penis and is intended for aesthetic purposes." Dkt. 32, Ex. A, Ex. B at 3. On May 13, 2022, FDA issued its clearance letter allowing marketing of the device for this use, having found the device "substantially equivalent" with previous versions of the Penuma. Dkt. 32, Ex. B at 1.

**B.    Peña's claims and experience with the Penuma implant**

Peña alleges that while browsing the internet he "saw advertisements for the Penuma device and procedure, including Dr. Elist's website." SAC ¶ 22. Peña contends that after reading these advertisements he believed the Penuma "had been approved by the FDA, and this belief gave him a sense of comfort that the device was safe and effective" for "men like him who had normal penises, but simply wanted their penises to be larger." SAC ¶ 23. According to Peña, these advertisements led him to believe the Penuma procedure was "permanent and completely reversible" with "no

DEFENDANTS' MOTION TO DISMISS EQUITABLE CLAIMS IN SAC
Case No: 2:22-cv-03391-SSS (PLAx)

adverse consequences from removal," and that the procedure would give him a "natural looking penis." SAC ¶¶ 24-25.

In October 2020, over a period of a few days, Peña met with Dr. Elist and his staff, completed a questionnaire, and Dr. Elist implanted the Penuma.[2] SAC ¶ 26. Peña alleges that following surgery his penis did not look or feel natural, he lost sensation and experienced pain, particularly during intercourse, the implant eventually punctured the skin, and he had difficulty sleeping for three months. SAC ¶ 28.

Peña subsequently consulted a surgeon in Austin, Texas, and had the Penuma removed. SAC ¶ 29. Following removal, he allegedly experienced retraction of his penis, loss of sensation, and scarring. *Id*. As a result of his experience, Peña concluded that the Penuma device and procedure have "no value" for anyone and are "not safe or effective for healthy men with normal penises[.]" SAC ¶ 30.

In his First Amended Complaint, Peña alleged that "[i]f the Penuma device and procedure were redesigned to be safe and effective for cosmetic penile enlargement, FDA-cleared for this use, and truthfully marketed, there is a ***possibility*** that [he] would purchase a Penuma device and procedure in the future." FAC ¶ 69 (emphasis added). After the Court found this insufficient to establish standing to pursue injunctive relief, Peña filed his Second Amended Complaint, which makes a series of vague and inconsistent allegations as to whether Peña intends to purchase the Penuma implant and procedure in the future. *See* SAC ¶¶ 69, 115.

Peña brings a claim for damages under the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 ("CLRA"), and purports to bring additional claims for equitable relief, including restitution, disgorgement, and injunctive relief, under the False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"), Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), and CLRA.

---

[2] As noted in Defendants' prior motion to dismiss, Peña contacted Dr. Elist's office as early as July 2020. Dkt. 31 at 5, n.2.

4

## PROCEDURAL BACKGROUND

Defendants moved to dismiss the First Amended Complaint on August 1, 2022. Following briefing, the Court denied the motion except with respect to Peña's claims for equitable relief. 1/10/23 Order, Dkt. 50 at 11-12. The Court dismissed Peña's equitable claims, finding that he did "not allege an inadequate remedy at law" and his "allegation that there is a 'possibility' he and the class members would purchase Penuma device and procedure in the future is insufficient to confer standing to pursue injunctive relief." *Id.* at 12. The Court granted Peña leave to amend the First Amended Complaint with regard to the equitable claims only. *Id.* Peña filed his Second Amended Complaint on January 20, 2023. Defendants have timely moved to dismiss the equitable claims in the Second Amended Complaint for failure to cure the pleading deficiencies.

## ARGUMENT

### I.      The Court should dismiss Plaintiff's claims for equitable relief.

Peña seeks equitable relief under all three counts of the Second Amended Complaint. *See* SAC ¶¶ 86-87 (seeking injunctive relief, restitution, and disgorgement under FAL); *id.* ¶¶ 104-05 (seeking injunctive and equitable relief under CLRA); *id.* ¶¶ 117-18 (seeking injunctive relief and restitution under UCL). All of Peña's claims for equitable relief fail because he has not pleaded facts showing that he lacks an adequate legal remedy. His claim for injunctive relief fails additionally because he has not plausibly alleged that he is likely to suffer a repeated injury.

#### A.      Plaintiff has not pleaded the lack of an adequate legal remedy.

As an initial matter, any claim for equitable relief requires a plaintiff to plead facts that, if proven, would show legal remedies would be inadequate. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-44 (9th Cir. 2020); *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022) (finding *Sonner* was properly applied to dismiss UCL equitable claims at pleading stage for failure to

5

allege lack of adequate legal remedy, and rejecting argument that UCL remedies are cumulative to other remedies and adequacy of legal remedies cannot be known until trial). Any state rule to the contrary does not apply in federal court. *Sonner*, 971 F.3d at 841-44. *Sonner* "leaves little room for debate as to whether Plaintiffs must plead that they lack an adequate legal remedy in order to bring their claims for equitable relief." *Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *2 (C.D. Cal. Dec. 14, 2022); *see Lisner v. Sparc Grp. LLC*, 2021 WL 6284158, at *8 (C.D. Cal. Dec. 29, 2021) (confirming "the majority of district courts have held that *Sonner*'s reasoning applies at the pleading stage").

The question is not whether Peña is likely to succeed on his legal claim. Rather, the question is whether, assuming Peña *did* prevail, the legal remedy would be adequate. *See Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *4 (C.D. Cal. Dec. 14, 2017) (holding that if plaintiffs ultimately could not recover, that would not necessarily mean a legal remedy was inadequate, "only that their claim lacks merit"). "[T]here is nothing in the [SAC] to suggest that monetary damages would not make [Peña] or the putative class whole." *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020); *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1120-21 (C.D. Cal. 2021) (same).

Peña alleges that he and the putative class have "suffered an ascertainable loss of money, namely, the cost of purchasing the Penuma device and procedure." SAC ¶ 67. However, Peña has brought a claim for damages under the CLRA that would allow him to recover that cost. There are no factual allegations in the SAC showing that Peña's legal remedy in the form of damages would be inadequate. To the extent Peña seeks disgorgement of profits, the amount recoverable could not exceed the amount necessary for restitution, which is already covered by his damages claim. *See Mack v. LLR, Inc.*, 2018 WL 6927860, at *6 (C.D. Cal. Aug. 15, 2018) (nonrestitutionary disgorgement is not permitted under the UCL, FAL, or CLRA);

6

*Henderson v. J.M. Smucker Co.*, 2011 WL 1050637, at \*3 (C.D. Cal. Mar. 17, 2011) (UCL and FAL do not allow for disgorgement remedy).

Peña alleges that he has no adequate legal remedy "[d]ue to the continuing imminent threat" of future injury. SAC ¶ 69. But there is no need to invoke injunctive remedies for a Penuma implant that Peña has not yet purchased. As Judge Birotte explained in dismissing claims on this basis, "nothing suggests that damages will not be adequate for future purchasers simply because they have not purchased their [implants] yet. Once those purchasers purchase their [implants], damages will be as adequate a remedy for them as it will be for currently-existing purchasers."[3] *Clark*, 528 F. Supp. 3d at 1121. In any event, as explained in the next section, Peña has not plausibly alleged the threat of any future injury to himself.

Peña may contend that he is seeking equitable relief in the alternative to his legal claim, but that will do him no good. Although alternative pleading is permitted, a plaintiff must still comply with the requirements for each alternative. *See, e.g.*, *Drake v. Toyota Motor Co.*, 2020 WL 7040125, at \*14 (C.D. Cal. Nov. 23, 2020). For equitable claims, one of those requirements is pleading facts that, if proven, would show the legal remedy is inadequate. *See, e.g.*, *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1088 (S.D. Cal. 2021) (rejecting "alternative" pleading of UCL claim by plaintiffs who failed to allege facts showing legal remedy was inadequate); *Drake*, 2020 WL 7040125, at \*14 (same). Moreover, Peña does not premise his claims for equitable relief on a different factual theory, as required for alternative pleading. *Rodriguez v. Just Brands USA, Inc.*, 2021 WL 1985031, at \*8 (C.D. Cal. May 18, 2021) (finding that "legal and equitable claims based on the same factual predicates are not true alternative theories of relief but rather are duplicative") (quoting *Madrigal*, 2017 WL 6940534, at \*5).

---

[3] It is important to remember that Peña seeks recovery only for economic harm. Thus, damages will be just as adequate a remedy for any future purchase of the Penuma implant and procedure as it is for his current alleged economic injury.

7

The failure to plead the lack of an adequate legal remedy bars all forms of equitable relief, including injunctive relief. *Clark*, 528 F. Supp. 3d at 1120-22 (collecting cases); *PDF Print Commc'ns Inc. v. Federated Mut. Ins. Co.*, 2022 WL 2189631, at *3 (C.D. Cal. Mar. 29, 2022); *Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020); *Gibson*, 2020 WL 5492990, at *3. Because Peña has not pleaded facts showing his legal remedy for damages under the CLRA is inadequate, his equitable claims must be dismissed.

### B.    Plaintiff lacks standing to seek injunctive relief.

Peña also has not plausibly alleged that he is likely to suffer a repeated injury and therefore lacks Article III standing to seek injunctive relief. To have standing, Peña must show that "he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (cleaned up). Peña "must demonstrate 'a real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). The threat of future injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Peña doesn't face a real and immediate threat of repeated injury. In his prior complaint, Peña alleged that "[i]f the Penuma device and procedure were redesigned to be safe and effective for cosmetic penile enlargement, FDA-cleared for this use, and truthfully marketed, there is a ***possibility*** that [he] would purchase a Penuma device and procedure in the future." FAC ¶ 69 (emphasis added). The Court correctly found that alleging there is a "possibility" he would buy the Penuma device and procedure in the future "is insufficient to confer standing to pursue injunctive relief." Dkt. 50 at 12.

Following the Court's order granting him leave to amend, Peña has (surprisingly) changed his mind. He now alleges that "[i]f the Penuma device and procedure were redesigned to be safe and effective for cosmetic penile enlargement, FDA-cleared for this use, and truthfully marketed, [he] *would* purchase a Penuma device and procedure in the future." SAC ¶ 69. However, in the very next sentence Peña contradicts himself by alleging there is only a "threat" that he "will purchase the Penuma device or procedure in the future … because [he] *may* reasonably, but incorrectly, assume the product was improved." *Id.* (emphasis added). He then contradicts himself again by asserting there also is a "threat" he "will be unable to rely on Penuma's advertising or labeling in the future, and so *will not* purchase a Penuma device or procedure although [he] would like to." *Id.* (emphasis added). Further confusing matters, Peña also alleges that "if the Penuma device and procedure were redesigned to be safe and effective for cosmetic penile enlargement, FDA-cleared for this use, and truthfully marketed, there is a *possibility* that [he] … would purchase a Penuma device and procedure in the future." SAC ¶ 115.

Thus, Peña is alleging at once that he *would* buy the Penuma again, he *might* buy it again, he *might not* buy it again, he *will not* buy it again, and there is a *possibility* he would buy it again. This hodgepodge of equivocal and contradictory allegations is insufficient to demonstrate an "actual and imminent" future injury and cure Peña's lack of standing. *See Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1077 (S.D. Cal. 2019) ("Plaintiff's conflicting allegations do not meet the Article III standing requirement of 'real and immediate threat of repeated injury.'" (quoting *Bates*, 511 F.3d at 985)); *Archer v. Carnival Corp.*, 2020 WL 9264981, at *7 (C.D. Cal. Sept. 22, 2020) ("'[S]ome day' intentions—without any description of concrete plans … do not support a finding of the 'actual or imminent' injury that our cases require" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

DEFENDANTS' MOTION TO DISMISS EQUITABLE CLAIMS IN SAC
Case No: 2:22-cv-03391-SSS (PLAx)

Moreover, Peña's allegations are not plausible. Peña's new contradictory allegations on the "threat" of future injury were lifted nearly word for word from *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018). But *Davidson* was setting forth two separate examples as to how, in **different cases**, a once-deceived consumer might have standing to seek injunctive relief. The court found that "***[i]n some cases***, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* (emphasis added). While "***[i]n other cases***, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970 (emphasis added).

*Davidson* suggested that a plaintiff might plausibly allege one or the other in a given case. But Peña has implausibly made **both** allegations in the **same case**, which means he has no present intention either way. This ambivalence is insufficient for Article III standing. *See In re Coca-Cola Prods. Mktg. and Sales Pract. Litig.*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) ("[T]he imminent injury requirement is not met by alleging that the plaintiffs would *consider* purchasing Coke.") (cleaned up) (citation omitted); *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (statement that plaintiff would "consider buying" the products in the future did not constitute actual or imminent injury).

This case also differs from *Davidson* in a critical way. There, the plaintiff plausibly alleged that she wanted to buy "flushable" wipes in the future but would have "no way of determining" whether the representation that the wipes were flushable was true. *Davidson*, 889 F.3d at 970-71. Peña, on the other hand, has the ability to determine the FDA-cleared uses for the Penuma before buying the device

DEFENDANTS' MOTION TO DISMISS EQUITABLE CLAIMS IN SAC
Case No: 2:22-cv-03391-SSS (PLAx)

and procedure again. Indeed, Peña has already been informed through this lawsuit that FDA cleared the Penuma for "augmentation, reconstructive and cosmetic surgery" on May 13, 2022. Dkt. 32, Ex. B at 3.[4]

Peña also cannot plausibly allege that he would undergo another surgery and risk severe personal injury to himself without knowing whether the concerns about the Penuma implant and procedure that led him to file this lawsuit still existed. No reasonable person would do that. Moreover, Peña is now aware of the potential complications from his alleged personal experience, so there is no threat that in the future he would believe this type of surgery is without risk or that favorable results are assured. What's more, it is implausible to believe Peña would even ask the man he is suing for fraud to perform the same procedure on him again—or that Dr. Elist would ever agree to do so or sell him the implant again.[5]

Peña's allegations regarding the alleged injuries of putative class members are irrelevant. To have standing, he must allege that *he* faces a risk of imminent harm. *See Hodgers-Durgin v. de la Vina,* 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief. Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek."); *Hoffman v. Ford Motor Co.,* 2021 WL 3265010, at *10 (C.D. Cal. Mar. 31, 2021). Peña has not, and cannot

---

[4] The FDA letter clearing the Penuma implant for this use is publicly available on FDA's website at https://www.accessdata.fda.gov/cdrh_docs/pdf22/K220760.pdf. The Court may consider this undisputed fact for purposes of a motion under Rule 12(b)(1) that challenges subject-matter jurisdiction. *Ruan v. United States*, 831 F. App'x 797, 799 (9th Cir. 2020) ("[A] district court may consider 'undisputed facts in the record' in order to adjudicate a Rule 12(b)(1) motion that mounts a factual attack on subject-matter jurisdiction." (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

[5] Unlike the typical consumer product, this is a medical device requiring the defendant-physician's consent; it is not solely up to Peña whether to buy it again.

11

establish standing. Accordingly, the Court should dismiss the claim for injunctive relief.

Because Count One (FAL) and Count Three (UCL) seek only equitable relief, the Court should dismiss these counts in their entirety, along with the claims for equitable relief (including injunctive relief) under Count Two (CLRA).

## CONCLUSION

For all the foregoing reasons, the Court should dismiss Count One, Count Three, and the claims for injunctive and other equitable relief under Count Two of Plaintiff's Second Amended Class Action Complaint.

Dated:  February 3, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:    /s/ *Amir M. Nassihi*
Amir M. Nassihi
Michael L. Mallow
Jennifer M. Stevenson
Mayela C. Montenegro-Urch

Jennifer M. Stevenson (admitted *pro hac vice*)
jstevenson@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone:   (816) 474-6550
Facsimile:    (816) 421-5547

Attorneys for Defendants
INTERNATIONAL MEDICAL DEVICES, INC., MENOVA INTERNATIONAL, INC., GESIVA MEDICAL, LLC, JAMES J. ELIST M.D., a Medical Corporation, and DR. JAMES ELIST

## **CERTIFICATE OF COMPLIANCE PER LOCAL RULE 11-6.2**

The undersigned, counsel of record for Defendants International Medical Devices, Inc., Menova International, Inc., Gesiva Medical, LLC, James. J. Elist M.D., A Medical Corporation, and Dr. James Elist, certifies that this brief contains 3,838 words, which:

   _X_   complies with the word limit of L.R. 11-6.1.

   ____   complies with the word limit set by court order dated _____.

Dated: February 3, 2023          _/s/ Amir M. Nassihi_

                       Amir M. Nassihi

DEFENDANTS' MOTION TO DISMISS EQUITABLE CLAIMS IN SAC
Case No: 2:22-cv-03391-SSS (PLAx)