Amir M. Nassihi (SBN: 235936)
anassihi@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street Suite 2300
San Francisco, California 94105
Telephone:   (415) 544-1900
Facsimile:    (415) 391-0281

Michael L. Mallow (SBN: 188745)
mmallow@shb.com
Mayela C. Montenegro-Urch (SBN: 304471)
mmontenegro@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, California 90067
Telephone:   (424) 285-8330
Facsimile:    (424) 204-9093

*[Additional Counsel on Signature Page]*

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| EDWARD PEÑA and BRANDON MILLER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL MEDICAL DEVICES, INC., MENOVA INTERNATIONAL, INC., GESIVA MEDICAL, LLC, JAMES J. ELIST M. D., a Medical Corporation, and Dr. James ELIST<br><br>Defendants. | Case No. 2:22-cv-03391-SSS (RAOx)<br><br>Judge: Hon. Sunshine S. Sykes<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Amir Nassihi and [Proposed] Order]<br><br>Date:  September 29, 2023<br>Time:  2:00 p.m.<br>Ctrm:  2 (via Zoom video conference)<br>Judge:  Hon. Sunshine S. Sykes<br><br>Complaint Filed:  May 25, 2022<br>First Am. Compl. Filed:  June 15, 2022<br>Second Am. Compl. Filed: Jan. 20, 2023<br>Third Am. Compl. Filed: July 19, 2023 |

**TO THE COURT, ALL PARTIES AND ALL ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on September 29, 2023 at 2:00 p.m., or as soon thereafter as may be heard before the Honorable Sunshine S. Sykes via Zoom video conference in Courtroom 2 of the United States Courthouse located at 3470 Twelfth Street, Riverside, California 92501, Defendants International Medical Devices, Inc., Menova International, Inc., Gesiva Medical, LLC, James J. Elist M.D., a Medical Corporation, and Dr. James Elist (collectively "Defendants") will and hereby do move this Court: (1) for an order compelling Plaintiffs Edward Peña and Brandon Miller to arbitrate their individual claims in this matter; (2) to stay all proceedings pending completion of arbitration; and (3) to stay all proceedings—including all discovery and discovery-related motion practice—until this Motion is decided.

Plaintiffs should be compelled to arbitrate their individual claims against Defendants pursuant to the Federal Arbitration Act and California law because each signed Physician-Patient Arbitration agreements that encompass their claims in this case.

Defendants base this Motion on this Notice, the supporting Memorandum of Points and Authorities attached hereto, the Declaration of Amir Nassihi and exhibits thereto, the Declaration of Dr. James J. Elist, M.D., and exhibits thereto, the Declaration of Janice Maranan, all pleadings and papers on file with this Court in this action, and any further oral and written arguments and evidence the parties may present at or before the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 26, 2023 at 1:30 P.M. Pacific Time. Amir M. Nassihi and Jennifer M. Stevenson were present for Defendants, and Amy Tabor, Michael A. Caddell, and Cynthia Chapman appeared for Plaintiffs. The parties conferred about Defendants' demand that Plaintiffs submitted to arbitration of their individual claims

against Defendants, and Defendants' filing of this Motion, via a Zoom teleconference that lasted approximately 20 minutes. The parties were unable to resolve these issues at the conference.

Dated: August 7, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:   /s/ *Amir M. Nassihi*

Amir M. Nassihi
Michael L. Mallow
Jennifer M. Stevenson
Mayela C. Montenegro-Urch

Jennifer M. Stevenson (admitted *pro hac vice*)
Evan D. Montgomery (admitted *pro hac vice*)
jstevenson@shb.com
emontgomery@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone:   (816) 474-6550
Facsimile:   (816) 421-5547

Attorneys for Defendants

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .........................................1

I.      The Physician-Patient Arbitration Agreements...................................1

II.     Plaintiffs' Claims in This Action.......................................................4

ARGUMENT .......................................................................................................5

I.      The FAA Applies to the Physician-Patient Arbitration Agreements..............6

II.     The Court Should Compel Plaintiffs to Arbitrate Their Claims................8

        A. The Physician-Patient Arbitration Agreements Are Valid and Enforceable.
        ...............................................................................................8

        B.  Plaintiffs' Claims Are Covered by the Agreements .................................9

        C.  Defendants are Parties or Third-Party Beneficiaries Entitled to
            Enforce the Agreements. ....................................................................9

                1.  Dr. Elist Is A Party to the Agreements Signed on His Behalf by His
                    Authorized Representatives and Agents..........................9

                2.  All Defendants Are Entitled to Enforce the Agreements...........10

III.    Plaintiffs' Claims Should Be Stayed Pending Completion of Arbitration....13

CONCLUSION ....................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                 Page(s)

*Allied-Bruce Terminix Cos., Inc., v. Dobson*,
   513 U.S. 265 (1995) ............................................................6

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
   785 F.3d 1320 (9th Cir. 2015) ......................................7

*AT&T Mobility, LLC*,
   563 U.S. 333 ...................................................................4, 5

*Carroll v. United States*,
   116 F.3d 1485 (9th Cir. 1997) ...................................12

*Cervantes v. Voortman Cookies, Ltd.*,
   2019 WL 3413419 (S.D. Cal. July 29, 2019) ..........12

*Chiron Corp v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ......................................5

*Christensen v. Superior Ct.*,
   54 Cal. 3d 868 (1991) ..................................................11

*Cir. City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002) .................................7, 8

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ......................................................5, 6

*Cortez v. Cambridge Real Est. Servs., Inc.*,
   2023 WL 4534946 (N.D. Cal. June 16, 2023) ........12

*Dominguez v. Stone Brewing Co., LLC*,
   2020 WL 3606396 (S.D. Cal., July 2, 2020) ...........11

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*,
   35 Cal. 3d 312 (1983) ....................................................5

*Farfan v. SSC Carmichael Operating Co. LP*,
   2019 WL 4933577 (N.D. Cal. Oct. 7, 2019) .....11, 12

*Filippo Indus., Inc. v. Sun Ins. Co. of New York*,
   74 Cal. App. 4th 1429, (1999) ......................................9

*Galaxia Elecs. Co. v. Luxmax U.S.A.*,
   2017 WL 11566394 (C.D. Cal. Dec. 28, 2017) ........12

*Garcia v. Pexco, LLC*,
   11 Cal. App. 5th 782, (2017) ................................................................11

*Goonewardene v. ADP, LLC*,
   6 Cal. 5th 817 (2019) .....................................................................9. 10

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000) .............................................................................7

*Harris v. Superior Ct.*,
   188 Cal. App. 3d 475 (1986) ...............................................................9

*Jones v. Deutsche Bank AG*,
   2007 WL 951811 (N.D. Cal. Mar. 28, 2007) ......................................12

*Kilgore v. KeyBank, Nat'l Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ............................................................5

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ............................................................5

*Lamps Plus, Inc. v. Varela*,
   203 L. Ed. 2d 636, 139 S. Ct. 1407 (2019) .......................................11

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
   2017 WL 2727874 (N.D. Cal. Feb. 14, 2017) ....................................12

*Marmet Health Care Ctr v. Brown*,
   565 U.S. 530 (2012) .........................................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ..............................................................................5

*Ngo v. BMW of N. Am.*, LLC,
   23 F. 4th 942 (9th Cir. 2022) .............................................................9

*People v. Maplebear Inc.*,
   81 Cal. App. 5th 923 (2022) ...............................................................5

*Quach v. California Com. Club, Inc.*,
   78 Cal. App. 5th 470 (2022) ...............................................................5

*Ronay Fam. Ltd. P'ship v. Tweed*,
   216 Cal. App. 4th 830 (2013) .............................................................9

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (2015) .......................................................................5

*Sanders v. Telacu Constr. Mgmt.*,
  2019 WL 7906427 (C.D. Cal. Oct. 9, 2019)....................................................4

*Sanfilippo v. Tinder, Inc.*,
  2018 WL 6681197 (C.D. Cal. Dec. 18, 2018)................................................7

*Scott v. Yoho*,
  248 Cal. App. 4th 392 (2016) *as modified*.................................................6, 7

*Shivkov v. Artex Risk Sols., Inc.*,
  974 F.3d 1051 (9th Cir. 2020) ................................................................4, 5

*Stiener v. Apple Computer, Inc.*,
  2007 WL 4219388 ...........................................................................................12

*Summit Health, Ltd. v. Pinhas*,
  500 U.S. 322 (1991)........................................................................................6, 7

STATUTES

9 U.S.C. § 2......................................................................................................4, 5

9 U.S.C. § 3........................................................................................................12

9 U.S.C. § 4..........................................................................................................4

Cal. Civ. Code § 1280.........................................................................................5

Cal. Civ. Code § 1550.........................................................................................7

RULES

Fed. R. Civ. P. 23(a) .......................................................................................12

## **INTRODUCTION**

In connection with surgical procedures performed by Defendant Dr. James Elist underlying their claims in this case, Plaintiffs Edward Peña and Brandon Miller signed Physician-Patient Arbitration Agreements. Despite agreeing to arbitrate any claims related to medical services provided to them by Dr. Elist, Plaintiffs brought their claims related to the Penuma penile implant and surgical procedures in this Court. The recently-filed Third Amended Complaint makes clear that Plaintiffs' claims fall squarely within the scope of the Physician-Patient Arbitration Agreements. These are valid and enforceable contracts, and all Defendants are parties, third-party beneficiaries, or allegedly liable as participants in a "joint enterprise," and therefore entitled to enforce them under California law.

Accordingly, pursuant to the Federal Arbitration Act and California law, Defendants move to compel each Plaintiff to arbitrate their individual claims, as they agreed to do, and to stay this action until the arbitrations are completed.

## **FACTUAL AND PROCEDURAL BACKGROUND**

**I.     The Physician-Patient Arbitration Agreements.**

Peña, a resident of Hidalgo County, Texas, underwent surgery to receive a Penuma silicone penile implant in October 2020. *See* Third Am. Compl. ("TAC") ¶¶ 1, 28.

Miller, a resident of Fresno County, California, underwent Penuma-related surgeries in November 2019, November 2020, and March 2021. *Id.* ¶¶ 39, 43, 45.

Each Plaintiff signed arbitration agreements in connection with each of these surgeries; specifically, Peña signed a Physician-Patient Arbitration Agreement on October 2, 2020, and Miller signed Physician-Patient Arbitration Agreements on November 1, 2019, November 9, 2020, and March 5, 2021. *See* Declaration of Dr.

James J. Elist, M.D. ("Elist Decl.") at ¶¶ 9–13, and Exhibits 1–4 thereto; *see also* Declaration of Janice Maranan ("Maranan Decl.") at ¶¶ 4–7.

Each Agreement provides, in pertinent part:

> **Article 1:  Agreement to Arbitrate:**  It is understood that *any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings*. Both parties to this contract, by entering into it, are giving up their constitutional rights to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.

> **Article 2:  *All Claims Must be Arbitrated*:**  It is the intention of the parties that *this agreement bind all parties whose claims may arise out of or relate to treatment or service provided by the physician* including any spouse or heirs of the patient and any children, whether born or unborn, at the time of the occurrence giving rise to any claim. . . .
>
> *All claims* for monetary damages exceeding the jurisdictional limit of the small claims court *against the physician, and the physician's partners, associates, association, corporation or partnership*, and the employees, agents and estates of any of

them, ***must be arbitrated*** including, without limitation, claims for loss of consortium, wrongful death, emotional distress or punitive damages. . . .

**Article 3: Procedures and Applicable Law:** . . . The parties consent to the intervention and joinder in this arbitration of ***any person or entity which would otherwise be a proper additional party in a court action, and upon such intervention and joinder any existing court action against*** such additional person or entity shall be stayed pending arbitration. …." *Id.* (emphasis added).

*See* Elist Decl., Exs. 1–4 (emphases added).

Plaintiffs signed the Agreements just below the following statement, printed in all caps:

**NOTICE:  BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL.  SEE ARTICLE 1 OF THIS CONTRACT**.

*Id.* (emphasis in originals).  The Agreements included no provisions related to class arbitration and do not reference class actions or class arbitration. *Id.*

## II.     Plaintiffs' Claims in This Action.

Plaintiffs filed the TAC on July 19, 2023, alleging claims for violations of California's False Advertising Law, Consumer Legal Remedies Act, and Unfair Competition Law on behalf of Peña and, for the first time, Miller. *See* Dkt. No. 71. The gravamen of each of Plaintiffs' claims are their allegations that the medical procedures performed on them by Dr. Elist were unnecessary or "ha[d] no value," and that the Penuma device and procedures Dr. Elist performed were not "safe and effective . . . for cosmetic enhancement of penis size in men with [the normal or] healthy penises" Plaintiffs allege they had prior to their surgeries. *See* TAC ¶ 5; *see also id.* ¶¶ 32 and 47. Plaintiffs claim that their Penuma implants and procedures resulted in "severe pain," "abnormal appearance," "disfigurement and scarring," "sexual dysfunction," and infections. *Id.* ¶¶ 30–31, 43–44, 46, and 82–83. Notably, in support of these allegations, the TAC cites to a complaint to the California Medical Board against Dr. Elist, alleging that Penuma procedures on his patients fell below the standard of care and amounted to "gross negligence, repeated negligent acts, and incompetence," i.e., medical malpractice. *See id.* ¶ 87. Dr. Elist strenuously denies those allegations, just as he (and the other Defendants) deny the parallel allegations in this case.

Dr. Elist, the physician who performed the Penuma implantation surgeries on Peña and Miller (*see* TAC ¶¶ 28, 39, 43, and 45), is the sole shareholder and owner of Defendants James J. Elist, M.D., a Medical Corporation, International Medical Devices, Inc., and Menova International, Inc. *See* Elist Decl. at ¶ 3. Plaintiffs allege that all Defendants – including Defendant Gesiva Medical, LLC – "acted as a joint enterprise with regard to all of the actions alleged" in the TAC related to the Penuma surgeries Dr. Elist performed on them (*see* TAC ¶¶ 18–22), and generally do not differentiate between Defendants throughout the TAC. *See generally* TAC.

On July 27, 2023, following the filing of the TAC and pursuant to Article 3 of the Physician-Patient Arbitration Agreements, Defendants communicated written demands for arbitration to counsel for both Plaintiffs. *See* Declaration of Amir Nassihi ("Nassihi Decl."), at ¶ 2, and Exhibit 1 thereto.

This case remains at a very early stage. Peña and Defendants have exchanged preliminary disclosures and engaged in very limited written discovery, and have agreed that Defendants' participation in the Rule 26 conference, service of disclosures and related activities would not constitute a waiver of their right to compel arbitration as to Peña's claims. Indeed, the case is early enough that Plaintiffs filed the TAC that added Miller as a Plaintiff just two weeks ago.

## ARGUMENT

"The Federal Arbitration Act ('FAA') provides that written arbitration agreements in contracts 'evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Sanders v. Telacu Constr. Mgmt.*, No. CV 19-766-DMG (JCX), 2019 WL 7906427, at *2 (C.D. Cal. Oct. 9, 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563, U.S. 333, 339 (2011) and 9 U.S.C. § 2). "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court" that would otherwise have jurisdiction over the suit "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA reflects a "'liberal federal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract,'…" *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058 (9th Cir. 2020) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *AT&T Mobility, LLC*, 563 U.S. at 339)).[1]

---

[1] In addition to their arbitration rights under the FAA, Defendants are also entitled to arbitration under the California Arbitration Act. *See* Cal. Civ. Code § 1280 *et seq.*

In ruling on a motion to compel arbitration, "[t]he basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Shivkov*, 974 F.3d at 1058 (quoting *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1085 (9th Cir. 2013) (en banc) (quoting *Chiron Corp v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). While state law governs the validity of the arbitration contract, federal substantive law governs its scope and applicability to the dispute at hand, with "any doubts concerning the scope of arbitrable issues . . . resolved in favor of arbitration[.]" *Kramer*, 705 F.3d at 1126 (quoting *Chiron Corp.*, 207 F.3d at 1131 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983))).

## I.    The FAA Applies to the Physician-Patient Arbitration Agreements

The FAA applies to any arbitration agreement that is (1) "written" and (2) in a contract "evidencing a transaction involving commerce[.]" 9 U.S.C. § 2. Both requirements for FAA applicability are met here.

First, each of the four Physician-Patient Arbitration Agreements signed by Peña and Miller were in writing. *See* Elist Decl. at ¶¶ 9–13, and Exs. 1–4 thereto; *see also* Maranan Decl. at ¶¶ 3–7.

Second, the agreements plainly evidence transactions involving interstate commerce. Courts interpret FAA's term "involving commerce" broadly. *See, e.g.*, *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding requisite commerce for

---

Like federal law, "California law strongly favors arbitration as a speedy and relatively inexpensive means of dispute resolution." *Quach v. California Com. Club, Inc.* 78 Cal. App. 5th 470, 477 (2022), cleaned up, review granted (Aug. 24, 2022); *see also Sanchez v. Valencia Holding Co., LLC* 61 Cal. 4th 899, 924 (2015) (reversing lower court's ruling that refused to enforce arbitration agreement between plaintiff and automobile dealership); *People v. Maplebear Inc.* 81 Cal.App.5th 923, 930 (2022) (reaffirming California's "strong public policy in favor of arbitration."). As under federal substantive law, given the strong public policy in favor of arbitration, "doubts concerning the scope of arbitrable issues [under California law] are to be resolved in favor of arbitration." *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 323 (1983).

FAA coverage even when individual transaction did not have substantial effect on commerce.) In other words, it is "the functional equivalent of 'affecting' commerce," and "evidences the broadest possible exercise of the commerce clause power by the Congress." *Scott v. Yoho*, 248 Cal. App. 4th 392, 401 (2016) *as modified* (June 28, 2016) (quoting *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995)).

This standard is easily satisfied here. First, many of Dr. Elist's surgical patients, including a majority of patients undergoing the Penuma procedure at issue, reside outside the State of California, where Dr. Elist performs the surgeries, and regularly communicate with Dr. Elist and his employees about their procedures from their home states both before and after their surgeries. *See* Elist Decl. at ¶¶ 4–6. Indeed, Peña, a resident of Texas, is among those out-of-state patients. *See* TAC ¶ 6. Second, companies that manufacture the materials used in the Penuma implants are incorporated and headquartered outside of California. *See* Elist Decl. at ¶ 8. Finally, Dr. Elist has and continues to advertise both his medical practice and the Penuma implant and procedure to all 50 states through the internet, as Plaintiffs acknowledge. *Id.* at ¶ 7, *see also* TAC ¶¶ 24 34, and 67 ("Defendants market Penuma on Dr. Elist's personal website, https://www.drelist.com/, as well as at http://www.penuma.com.").

In *Scott v. Yoho*, the California Court of Appeal found that a Physician-Patient Arbitration Agreement substantively identical to the agreements at issue here involved interstate commerce when – like here – the plastic surgeon treated and communicated with patients from outside California, had business contacts with entities located outside of California, and advertised his services nationwide through the internet. *See Scott*, 248 Cal. App. 4th at 397–98, 401–02. The court there found that even though the procedure "was conducted in California by a state licensed doctor on an in-state patient . . . there [was] a sufficient nexus with interstate commerce to require enforcement of the . . . arbitration agreements under the Federal Arbitration Act." *Id.* at 402 (citing *Marmet*

*Health Care Ctr v. Brown*, 565 U.S. 530, 533 (2012); *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 327–30 (1991)).

As in *Scott*, the Physician-Patient Arbitration Agreements each Plaintiff signed involve interstate commerce, and the FAA applies.

**II.     The Court Should Compel Plaintiffs to Arbitrate Their Claims.**

**A.     The Physician-Patient Arbitration Agreements Are Valid and Enforceable.**

"A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.* 785 F.3d 1320, 1323 (9th Cir. 2015). The opposing party, in turn, bears the burden of establishing any defenses to enforceability. *Sanfilippo v. Tinder, Inc.,* No. 2:18-cv-08372-AB-JEMx, 2018 WL 6681197, at \*2 (C.D. Cal. Dec. 18, 2018) *aff'd sub nom. Sanfilippo v. Match Grp. LLC*, No. 20-55819, 2021 WL 4440337 (9th Cir. Sept. 28, 2021); *Green Tree Fin. Corp.-Alabama v. Randolph* 531 U.S. 79, 91 (2000) (parties challenging enforceability of an arbitration agreement bear burden of proving it is unenforceable).

In California, the essential elements of a contract are: (1) parties capable of contracting; (2) the parties' consent; (3) a lawful object; and (4) sufficient cause or consideration. *See* Cal. Civ. Code § 1550. Here, there is no dispute that the parties to the Physician-Patient Arbitration Agreements were capable of contracting, and that they communicated their consent by signing the agreements. *See* Elist Decl. at ¶¶ 9–13, and Exs. 1–4 thereto; *see also* Maranan Decl. at ¶¶ 3–7. The "object" of those agreements – the arbitration of disputes between patients and Dr. Elist related to their medical treatment – is not only lawful, but, as noted above, strongly favored by both federal and California public policy. And, finally, the agreement was supported by sufficient

consideration – namely, each party's agreement to forego litigation and arbitrate disputes covered by the agreement. *See Cir. City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) ("In other words, Circuit City's promise to submit to arbitration and to forego the option of a judicial forum for a specified class of claims constitutes sufficient consideration."). Thus, the agreements Plaintiffs signed are valid contracts under California law.

### B.   Plaintiffs' Claims Are Covered by the Agreements

Next, the Physician-Patient Arbitration Agreements signed by Plaintiffs Edward Peña and Brandon Miller encompass each of their claims in this case. As noted above, all of Plaintiffs' claims in this case stem from their allegations that the Penuma surgeries performed on them by Dr. Elist were unnecessary and had "no value," that the Penuma device and procedure were not safe and effective for patients with normal or healthy penises, and that Dr. Elist's performance of those procedures on them amounted to "gross negligence" or "incompetence" and fell below the standard of care. *See, e.g.*, TAC ¶¶ 5, 32, 47, and 87. Plaintiffs' claims as set out in the TAC are clearly within the scope of the Agreements, which explicitly provide that "any dispute . . . as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered" shall be arbitrated. *See* Elist Decl. at ¶¶ 9–13, and Exs. 1–4 thereto (at Article 1); *see also* Maranan Decl. at ¶¶ 3–7.

### C.   Defendants are Parties or Third-Party Beneficiaries Entitled to Enforce the Agreements.

Finally, all Defendants are entitled to enforce the Physician-Patient Arbitration Agreements.

#### 1.   Dr. Elist Is A Party to the Agreements Signed on His Behalf by His Authorized Representatives and Agents.

First, each Agreement was signed by an employee of the surgical center where

9

Dr. Elist performed the Plaintiffs' surgeries, acting on behalf of and as an authorized representative or agent of Dr. Elist. *See* Elist Decl. at ¶¶ 4, 9–12, and 13 ("It is my practice that, before I perform a Penuma implant procedure, an employee of [the surgery center], acting as my authorized representative, will sign a Physician-Patient Arbitration Agreement with the prospective patient on my behalf"); Maranan Decl. at ¶ 3 ("It is the standard operating practice, policy and procedure of the Surgery Centers that upon intake and before a patient is treated by any physician, that the patient sign a Physician-Patient Arbitration Agreement. Further, Dr. James Elist, a licensed physician with privileges at the Surgery Centers, has directed the Surgery Centers that each and every one of his patients sign a Physician-Patient Arbitration Agreement prior to treatment by him. These Physician-Patient Arbitration Agreements are effectuated by counter signature of the physician and/or their agent i.e. an employee of the Surgery Centers. Each and every Penuma patient of Dr. Elist who has been treated at the Surgery Centers has signed a Physician-Patient Arbitration Agreement before they received said treatment. . . ."). *See also, e.g.*, *Filippo Indus., Inc. v. Sun Ins. Co. of New York*, 74 Cal. App. 4th 1429, 1442, (1999) ("Where the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent.") (internal quotation and citation committed).

### 2. All Defendants Are Entitled to Enforce the Agreements.

At a minimum, all Defendants, including Dr. Elist (even if he were not a party) and Defendants International Medical Devices, Inc., Menova International, Inc., James. J. Elist, M.D., a Medical Corporation, and Gesiva Medical, LLC can enforce the Agreements as third-party beneficiaries. *See Ronay Fam. Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838 (2013) ("[A] third party beneficiary of an arbitration agreement may enforce it."); *Harris v. Superior Ct.*, 188 Cal. App. 3d 475, 478 (1986) ("It is well established that a non-signatory beneficiary of an arbitration clause is entitled to require

arbitration."). Under California law, where "(1) '[a] third party would in fact benefit from the contract;' (2) 'a motivating purpose of the contracting parties was to provide a benefit to the third party;' and (3) permitting the third party to enforce the contract 'is consistent with the objectives of the contract and the reasonable expectations of the contracting parties,'" that third party is a third-party beneficiary entitled to enforce an arbitration agreement. *Ngo v. BMW of N. Am.,* LLC, 23 F. 4th 942, 946 (9th Cir. 2022) (quoting *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019)). The third factor "calls for a judgment regarding the potential effect that permitting third party enforcement would have on the parties' contracting goals, rather than a determination whether the parties actually anticipated third party enforcement at the time the contract was entered into." *Goonewardene*, 6 Cal. 5th at 831.

Here, application of the *Goonewardene* factors demonstrates that Defendants are third-party beneficiaries entitled to enforce the Physician-Patient Arbitration Agreements. The benefit to Defendants – and the parties' intent to confer that benefit on third parties including Defendants – is clear from the plain language of the Agreements. Both Plaintiffs specifically consented to arbitrate claims against "any person or entity which would . . . be a proper additional party in a court action[.]" *See* Elist Decl. at ¶¶ 9–13, and Exs. 1–4 thereto (at Articles 2 and 3). And both Peña and Miller expressly agreed to arbitrate "[a]ll claims" that "arise out of or relate to treatment or service provided by the physician" made against "the physician, and the physician's partners, associates, association, corporation or partnership[.]" *See id*. Defendant Dr. Elist was the physician that performed Plaintiffs' surgical procedures, and Defendants James J. Elist M.D., a Medical Corporation, International Medical Devices, Inc., and Menova International, Inc. are all "corporations" of Dr. Elist – he is their owner and sole shareholder. *See id.* at ¶ 3.

Further, as noted above, Plaintiffs have alleged that all Defendants acted as a

"joint enterprise" with respect to their allegations in the TAC related to their Penuma surgeries performed by Dr. Elist (i.e., the "medical services rendered" by Dr. Elist under Article 1 and the "treatment or service provided" by him under Article 2 of the Agreements). *See id.*; *see also* TAC ¶¶ 18-22. Specifically, they allege that all Defendants "acted as a joint enterprise with regard to all of the actions alleged" in their TAC, that "[a]ll acts of each of the Defendants were ratified and adopted by each of their Co-Defendants," and state that "[w]henever this Complaint makes reference to any act of Defendants, the allegations refer to each of the Defendants, acting individually, and also to all of the Defendants acting jointly." *Id.* at ¶¶ 20–22. The California Supreme Court has described joint enterprise liability as a kind of "mutual agency, akin to a limited partnership." *See Christensen v. Superior Ct.*, 54 Cal. 3d 868, 893 (1991). Under analogous circumstances, where a plaintiff alleges joint enterprise liability and makes undifferentiated allegations against all defendants, courts routinely apply the agency exception and permit nonparty enforcement of an arbitration agreement. *See Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 788, (2017) (finding non-party to arbitration agreement was entitled to compel arbitration when "the operative complaint alleged [both defendants] were acting as agents of one another and every cause of action alleged identical claims against 'All Defendants' without any distinction.").

Plaintiffs' claims against each Defendant are claims "against the physician" (Dr. Elist) or his "partners, associates, association[s], corporation[s] or partnerships[s]" pursuant to Article 2 of the Agreements. *See id.* at ¶¶ 9–13, and Exs. 1–4 thereto (at Article 2), and each Defendant, at a minimum, is entitled to compel arbitration as a third-party beneficiary or based on Plaintiffs' allegations of "joint enterprise" liability.

\* \* \*

The Physician-Patient Arbitration Agreements each Plaintiff signed are valid and enforceable under California law, encompass the claims Peña and Miller have brought

in this case, and are enforceable by Defendants. Defendants therefore respectfully request that the Court grant their Motion and compel Plaintiffs to arbitrate their individual claims against Defendants.[2]

**III.** **Plaintiffs' Claims Should Be Stayed Pending Completion of Arbitration.**

The FAA requires that Plaintiffs' claims be stayed pending completion of arbitration. *See* 9 U.S.C. § 3. As such, Defendants respectfully request that this Court stay all proceedings through the conclusion of arbitration. Defendants further request that the Court stay all discovery while it decides this Motion to compel arbitration. Defendants have submitted compelling evidence and arguments showing that Plaintiffs' claims are subject to arbitration; a stay is necessary to preserve Defendants' right to arbitrate these claims and to avoid irreparable prejudice. Moreover, if Defendants' Motion is granted, discovery will proceed in the arbitral proceeding, rather that in this Court; as such, staying discovery will "further[] the goals of efficiency for the court[] and litigants." *See, e.g.*, *Galaxia Elecs. Co. v. Luxmax U.S.A.*, No. LA CV16-05144-

---

[2] Peña and Miller have brought this case as a putative class action. But, as noted above, while the Physician-Patient Arbitration Agreements Peña and Miller signed include provisions related to arbitration of claims related to surgeries by Dr. Elist, they make no mention of class arbitration. Because the parties did not agree to arbitrate on a classwide basis, Defendants move to compel arbitration of the individual claims of Peña and Miller. As the Supreme Court held in *Lamps Plus*, because "class arbitration fundamentally changes the nature of the 'traditional individualized arbitration' envisioned by the FAA, absent an "affirmative contractual basis" for concluding that parties agreed to class arbitration, courts may not infer an agreement to arbitrate putative class claims from ambiguous language in an arbitration agreement. *See Lamps Plus, Inc. v. Varela*, 203 L. Ed. 2d 636, 139 S. Ct. 1407, 1412 (2019) (citations omitted); *see also Dominguez v. Stone Brewing Co., LLC*, No. 20-CV-251-WQH-BLM, 2020 WL 3606396, at *12 (S.D. Cal., July 2, 2020) (ordering putative class representatives' individual claims to arbitration where agreement was silent on classwide or collective arbitration); *Farfan v. SSC Carmichael Operating Co. LP*, No. 18-CV-01472-HSG, 2019 WL 4933577, at *3 (N.D. Cal. Oct. 7, 2019) (dismissing putative class claims where individual claims of putative class representatives were ordered to arbitration, because there was "no class representative who [could] pursue the class claims.") (citing Fed. R. Civ. P. 23(a)); *Cervantes v. Voortman Cookies, Ltd.*, No. 3:19-CV-00700-H-BGS, 2019 WL 3413419, at *7 (S.D. Cal. July 29, 2019) (same); *Cortez v. Cambridge Real Est. Servs., Inc.*, No. 22-CV-07332-HSG, 2023 WL 4534946, at *4 (N.D. Cal. June 16, 2023) (finding putative class claims could not be arbitrated where clause purportedly permitting classwide arbitration was ambiguous).

JAK (GJSx), 2017 WL 11566394, at *2 (C.D. Cal. Dec. 28, 2017); *see also Carroll v. United States*, 116 F.3d 1485 (9th Cir. 1997) (affirming stay of discovery pending resolution of motion for summary judgment). For this reason, Courts routinely stay all proceedings, including discovery, in these circumstances. *See, e.g.*, *Galaxia Elecs. Co.*, 2017 WL 11566394, at *2 (noting that Ninth Circuit courts "routinely grant motions to stay discovery under similar circumstances.").[3]

## **CONCLUSION**

Defendants' Motion to compel arbitration of Peña and Miller's individual claims, and request for an immediate stay, should be granted.


Dated: August 7, 2023                    Respectfully submitted,

                                         SHOOK, HARDY & BACON L.L.P.

                                         By:   /s/ *Amir M. Nassihi*

                                         Amir M. Nassihi
                                         Michael L. Mallow
                                         Jennifer M. Stevenson
                                         Mayela C. Montenegro-Urch

                                         Jennifer M. Stevenson (admitted *pro hac vice*)
                                         Evan D. Montgomery (admitted *pro hac vice*)
                                         jstevenson@shb.com
                                         emontgomery@shb.com
                                         SHOOK, HARDY & BACON L.L.P.
                                         2555 Grand Boulevard
                                         Kansas City, Missouri 64108
                                         Telephone:   (816) 474-6550
                                         Facsimile:   (816) 421-5547

                                         Attorneys for Defendants

---

[3] *Mahamedi IP Law, LLP v. Paradice & Li, LLP*, No. 5:16-CV-02805-EJD, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (granting defendant's motion to stay discovery as to the plaintiff and third parties); *Stiener v. Apple Computer, Inc.*, No. C 07-4486-SBA, 2007 WL 4219388, at *1 ("In the interests of conserving the resources of the parties, a short stay of ... discovery pending the determination of the motion to compel arbitration is therefore prudent."); *Jones v. Deutsche Bank AG*, No. C 04-5357-FW-RS, 2007 WL 951811, at *1 (N.D. Cal. Mar. 28, 2007) ("issues of policy and expediency ... ordinarily support" granting a motion to stay discovery pending a ruling on a defendant's motion to compel arbitration).

## <u>CERTIFICATE OF COMPLIANCE PER RULE 11-6.2</u>

The undersigned, counsel of record for Defendants International Medical Devices, Inc., Menova International, Inc., Gesiva Medical, LLC, James J. Elist, M.D., a Medical Corporation, and Dr. James Elist, certifies that this brief contains 4,334 words, which:

     <u>  X  </u>   complies with the word limit of L.R. 11-6.1.

     <u>     </u>   complies with the word limit set by court order dated <u>     </u>.


Dated: August 7, 2023          Respectfully submitted,

                            SHOOK, HARDY & BACON L.L.P.

                            By: <u> /s/ Amir M. Nassihi          </u>
                                Amir M. Nassihi
                                Attorneys for Defendants

15

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:22-cv-03391-SSS (RAOx)

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to the within action. I am employed in the County of Orange, State of California. My business address is Jamboree Center, 5 Park Plaza, Suite 1600, Irvine, California 92614.  On the date shown below, I served the following documents:

### **DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

on the interested parties named herein and in the manner indicated below:

> Michael A. Caddell
> mac@caddellchapman.com
> Cynthia B. Chapman
> cbc@caddellchapman.com
> Amy E. Tabor
> aet@caddellchapman.com
> CADDELL & CHAPMAN
> P.O. Box 1311
> Monterey CA 93942
> Tel.: (713) 751-0400
> Fax: (713) 751-0906
> Attorneys for Plaintiffs

☐ **FIRST CLASS U.S. MAIL**: I am readily familiar with this business' practice for collecting and processing correspondence for mailing. Under that practice, correspondence is placed for collection and mailing in a sealed envelope with postage fully prepaid and deposited with the United States Postal Service on that same day in the ordinary course of business.

☒ **(ELECTRONIC FILING)** I provided the document(s) listed above electronically through the CM/ECF Electronic Filing system pursuant to the instructions set forth in the Local Rules for the United States District Court, Central District of California.

☐ **(E-MAIL OR ELECTRONIC TRANSMISSION)** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on August 7, 2023, at Irvine, California.

By: */s/ Mayela C. Montenegro-Urch*
Mayela C. Montenegro-Urch