Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
CADDELL & CHAPMAN
P.O. Box 1311
Monterey, CA 93942
Tel.: (713) 751-0400
Fax: (713) 751-0906

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| EDWARD PEÑA and BRANDON MILLER, *individually and on behalf of persons similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>INTERNATIONAL MEDICAL DEVICES, INC., MENOVA INTERNATIONAL, INC., GESIVA MEDICAL, LLC, JAMES J. ELIST, M.D., A MEDICAL CORPORATION, AND DR. JAMES ELIST,<br><br>*Defendants* | Case No. 2:22-cv-03391-SSS (RAOx)<br><br>**PLAINTIFFS' RESPONSE TO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date: September 29, 2023<br>Time: 2:00 pm<br>Crtm: 2 (via Zoom video conference)<br>Judge: Hon. Sunshine S. Sykes |


# TABLE OF CONTENTS

I. Introduction ....................................................................................................... 1

II. Standard of Review ........................................................................................... 2

III. Argument and Authorities ................................................................................. 2

    A. Defendants waived any right to arbitrate by litigating for over a year before moving to compel arbitration. ............................................. 2

    B. Defendants are not parties to, nor third-party beneficiaries of, the BHSPSC Arbitration Agreements. ......................................................... 7

        1. Dr. Elist is not a party to the BHSPSC Agreements and may not enforce them as an undisclosed principal. ..................... 7

        2. Defendants may not compel arbitration as third-party beneficiaries of the BHSPSC Arbitration Agreements. ............. 9

    C. Plaintiffs' claims are outside the scope of the BHSPSC Arbitration Agreements. ......................................................................................... 12

    D. The Court should not allow Defendants' meritless arbitration motion to delay discovery in this case. ................................................. 13

IV. Conclusion ....................................................................................................... 14


# TABLE OF AUTHORITIES
**CASES**

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ...................................................................................2

*Ford Motor Warranty Cases*,
  89 Cal. App. 5th 1324 (Cal. Ct. App. 2023) ....................................1, 7, 8, 10

*Franklin v. Santa Barbara Cottage Hospital*,
  82 Cal. App. 5th 395 (2022) ......................................................................11

*Freitas v. Cricket Wireless, LLC*,
  No. 19-cv-07270 WHA, 2022 WL 3018061 (N.D. Ca. July 29, 2022) ..........4

*Gonsalves v. Infosys Tech., Ltd.*,
  No. 09-cv-04112, 2010 WL 3118861 (N.D. Ca. Aug. 5, 2010) .....................4

*Goonewardene v. ADP, LLC*,
  6 Cal. 5th 817 (Cal. 2019) ...........................................................................9

*Harris v. Superior Court*,
  188 Cal. App. 3d 475, 477 (Cal. Ct. App. 1986)..........................................11

*Hill v. Xerox Business Servs., LLC*,
  59 F.4th 457 (9th Cir 2023).........................................................................3

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 73 (2002) ..............................................................................2, 13

*Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*,
  552 F. App'x 663 (9th Cir. 2014)..................................................................4

*Kramer v. Toyota Motor Corp.*
  705 F.3d 1122 (9th Cir. 2013).....................................................................2

*Mannick v. Kaiser Foundation Health Plan, Inc.*,
  No. 03-cv-5905, 2005 WL 3454134 (N.D. Cal. Dec. 16, 2005)...................12

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016).....................................................................3

*Morgan v. Sundance, Inc.*,
 142 S.Ct. 1708 (2022) ............................................................................................3

*Newirth by & through Newirth v. Aegis Senior Communities, LLC*,
 931 F.3d 935 (9th Cir. 2019) ...........................................................................1, 3, 4

*Ngo v. BMW of North America, LLC*,
 23 F.4th 942 (9th Cir. 2022) ..............................................................................9, 10

*Ontiveros v. Zamora*,
 No. 08-cv-0567, 2013 WL 593403 (E.D. Cal. Feb. 14, 2013) ..........................5

*Roman v. Jan-Pro Franchising Int'l, Inc.*,
 342 F.R.D. 274 (N.D. Cal. 2022) .......................................................................6

*Sandquist v. Lebo Auto., Inc.*,
 376 P.3d 506 (Cal. 2016) ...................................................................................10

*Stafford v. Rite Aid Corp.*,
 No. 17-cv-1340-AJB-JLB, 2020 WL 905606
 (S.D. Ca. Feb. 25, 2020), *aff'd*, 998 F.3d 862
 (9th Cir. May 21, 2021) ................................................................................4, 5, 6

*Steelworkers v. Warrior & Gulf Nav. Co.*,
 363 U.S. 574 (1960) ........................................................................................2, 13

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
 559 U.S. 662 (2010) ...........................................................................................2

*Tautges v. Glob. Datacenter Mgmt., Inc.*,
 No. 09-cv-0785, 2010 WL 3384980 (S.D. Cal. Aug. 26, 2010) .......................7

*United Specialty Ins. Co. v. Clean & Sober Media, LLC*,
 No. 2:20-cv-02765-RGK-KS, 2021 WL 3623300
 (C.D. Ca. April 16, 2021) ..................................................................................2

*Van Ness Townhouses v. Mar Indus. Corp.*,
 862 F.2d 754 (9th Cir. 1988) ..........................................................................3, 6

**STATUTES**

CAL. CIV. CODE § 1654

CAL. CODE CIV. P. § 1295 ................................................................................. 12

REST. 2D CONTRACTS § 206 ............................................................................. 11

**OTHER AUTHORITIES**

Malpractice, BLACK'S LAW DICTIONARY (11th ed. 2019) ....................................... 12

Case No. 2:22-cv-03391-SSS (RAOx)              – iv –

RESPONSE TO MOTION TO COMPEL ARBITRATION

## I. INTRODUCTION

Defendants waited over a year and brought two unsuccessful dispositive motions before deciding—in a last-ditch effort to avoid discovery and a class certification motion—to argue that agreements to which Defendants are not signatories somehow require Plaintiffs to arbitrate against them. (ECF No. 77.) In form contracts signed by the Beverly Hills South Pacific Surgery Center, Inc. and/or the Beverly Hills Premium Surgery Center, Inc. (the surgical centers where Dr. Elist performed Plaintiffs' Penuma procedures (together, "BHSPSC")), Plaintiffs agreed to arbitrate any "medical malpractice" claims against BHSPSC. (*See* ECF No. 77-2 at 6, 8, 10 & 12.) Despite the fact that Plaintiffs bring **no medical malpractice claims** and **no claims against BHSPSC**, Defendants attempt to leverage these agreements into a get-out-of-jail-free card to avoid facing Plaintiffs' class action claims for false advertising and consumer fraud.

Even if Defendants could show that they meet the "undisclosed principal" or "third-party beneficiary" exceptions to the "usual rule that only a signatory to an arbitration agreement is entitled to enforce it," *Ford Motor Warranty Cases*, 89 Cal. App. 5th 1324, 1342 (Cal. Ct. App. 2023), and even if they could re-cast Plaintiffs' false advertising and consumer fraud causes of action as "medical malpractice" claims, Defendants' motion should be denied because they waived any right to compel arbitration. Defendants decided to defer their arbitration motion for over a year. During this time, they attempted to avail themselves of the benefits of the federal court forum by bringing two unsuccessful motions to dismiss. *See Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 942 (9th Cir. 2019) (holding that filing a motion to dismiss "on a key merits issue" waived arbitration). For these three independent reasons—(1) Defendants waived arbitration; (2) Defendants are not signatories to the arbitration agreements; and (3)

Plaintiffs' claims are outside the scope of the arbitration agreements—the Court should deny Defendants' Motion.

## II. STANDARD OF REVIEW

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). That is because it is a "foundational FAA principle that arbitration is a matter of consent." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). Courts apply ordinary state law contract principles in deciding whether the parties agreed to arbitrate a particular dispute. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Whether enforcement of an arbitration agreement by a non-signatory is permissible is a question of state law. *Kramer v. Toyota Motor Corp.* 705 F.3d 1122, 1128 (9th Cir. 2013).

## III. ARGUMENT AND AUTHORITIES

### A. Defendants waived any right to arbitrate by litigating for over a year before moving to compel arbitration.

Before even considering whether Defendants can enforce the BHSPSC Arbitration Agreements as non-signatories or whether they can bring Plaintiffs' false advertising and consumer fraud claims within the scope of agreements limited to malpractice claims, the Court should find that Defendants waived any right to arbitrate by filing two unsuccessful motions to dismiss and litigating for over a year before belatedly moving to compel arbitration. "As a preliminary matter, waiver by litigation conduct is a gateway question of arbitrability that a court—rather than an arbitrator—may decide." *United Specialty Ins. Co. v. Clean & Sober Media, LLC*, No. 2:20-cv-02765-RGK-KS, 2021 WL 3623300, at *3 (C.D. Ca. April 16, 2021). In determining whether a party waived any right to compel arbitration, courts

consider (1) whether Defendants knew of the right to arbitrate, and (2) whether Defendants acted inconsistently with that right. *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1712–14 (2022) (citations omitted); *Hill v. Xerox Business Servs., LLC*, 59 F.4th 457, 468 (9th Cir 2023).

Here, Defendants knew the facts that they now claim give them a right to arbitrate at the outset of this litigation. Dr. Elist's Declaration states that he authorized a BHSPSC employee to sign the BHSPSC Arbitration Agreements. (ECF No. 77-2 ¶ 10.) Defendants produced these agreements and do not claim that they only recently discovered them. Defendants thus cannot reasonably dispute that they were aware of the BHSPSC Arbitration Agreements at the outset of litigation but chose not to demand arbitration at that time.

The Ninth Circuit has repeatedly held that the act of pursuing dispositive motions to an unfavorable ruling is inconsistent with enforcing an alleged right to arbitration. *Newirth*, 931 F.3d at 942; *Martin v. Yasuda*, 829 F.3d 1118, 1125–26 (9th Cir. 2016) (concluding that the defendants acted inconsistently with pursuing arbitration when they litigated extensively in federal court, including filing a motion to dismiss "on a key merits issue"); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756, 759 (9th Cir. 1988) (holding that arbitration waived by litigating arbitrable claims for two years in federal court, including filing a motion to dismiss for failure to state a claim). For example, in *Newirth*, the Ninth Circuit found that the defendant "[took] advantage of the federal forum by filing a motion to dismiss [the plaintiff's] arbitrable claims, with prejudice, for failure to state a claim"; this was "an intentional action inconsistent with [the defendant's] known right to compel arbitration":

> Only after receiving an adverse ruling on this motion did [defendant] refile the motion to compel arbitration that it had withdrawn a year earlier. Under the totality of these circumstances, we conclude that [defendant] knowingly decided to defer its right to compel arbitration to avail itself of the benefits of the federal court forum, an

>  intentional action inconsistent with its known right to compel arbitration.

*Newirth*, 931 F.3d at 942 (citation and internal quotation omitted).

Similarly here, Defendants chose to respond to Plaintiffs' claims with a motion to dismiss instead of a motion to compel arbitration. (ECF No. 42.) Plaintiff served written discovery requests, including Requests for Production, Interrogatories, and Requests for Admission, on September 9, 2022. (*See* Declaration of Amy E. Tabor, attached as Ex. 1 ("Tabor Decl.") ¶ 1.) Defendants served written responses and objections to this discovery on October 10, 2022. (*Id.* ¶ 2.) After the Court granted in part and denied in part Defendants' first Motion to Dismiss and Plaintiff filed his Second Amended Complaint, Defendants again chose to file a second Motion to Dismiss instead of demanding or moving to compel arbitration. (ECF No. 53.) In short, Defendants repeatedly tested the judicial winds in an effort to assess whether they could get the case dismissed before changing their minds and deciding that they preferred arbitration. *Freitas v. Cricket Wireless, LLC*, No. 19-cv-07270 WHA, 2022 WL 3018061, at *2 (N.D. Ca. July 29, 2022) (holding that filing "two motions to dismiss against plaintiff on key merits issues" was inconsistent with the right to arbitrate); *Stafford v. Rite Aid Corp.*, No. 17-cv-1340-AJB-JLB, 2020 WL 905606, at *5 (S.D. Ca. Feb. 25, 2020), *aff'd*, 998 F.3d 862 (9th Cir. May 21, 2021) (holding that defendant waived arbitration where defendant "decided to bring two motions to dismiss, on the merits, arguing that all four of [p]laintiff's causes of action should be dismissed for failure to state a claim"); *Gonsalves v. Infosys Tech., Ltd.*, No. 09-cv-04112, 2010 WL 3118861, at *3–4 (N.D. Ca. Aug. 5, 2010) (holding arbitration waived where defendant "'substantially invoked' the 'litigation machinery'" by filing two motions to dismiss, explaining that such conduct is like "testing the water before taking the swim"); *see also Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*, 552 F. App'x 663, 665 (9th Cir. 2014) (holding

defendants waived their right to arbitrate where they waited 11 months to file a motion to compel arbitration, conducted discovery, and litigated both a motion to dismiss and a motion for a preliminary injunction).

It was not until April 3, 2023, while Defendants' Second Motion to Dismiss was pending, that Defendants' counsel first raised the issue of arbitration during the course of a meet-and-confer on Plaintiff's discovery requests and shared the BHSPSC Arbitration Agreements with Plaintiff's counsel. (Tabor Decl. ¶ 3.) Even then, however, Defendants did not demand or move to compel arbitration. After the Court denied Defendants' Second Motion to Dismiss on April 17, 2023, Defendants chose to file an Answer and did not assert a right to arbitration, nor did Defendants so much as mention the BHSPSC Arbitration Agreements in their answer. (ECF No. 62); *see Ontiveros v. Zamora*, No. 08-cv-0567, 2013 WL 593403, at *10 (E.D. Cal. Feb. 14, 2013) (holding arbitration waived where defendant did not "allege its right to arbitrate or its intention to do so" in its answers).

As late as July 7, 2023, when the parties filed their Joint Rule 26 Report,[1] Defendants still had not made up their mind whether they wished to move to compel arbitration, writing that while they were "evaluating a potential motion to compel arbitration," "Defendants currently anticipate a motion to dismiss allegations in Plaintiffs' Third Amended Complaint should the Court permit amendment, as well as a Motion for Summary Judgment as to some or all of the legal issues noted above." (ECF No. 67 at 9–10.) It was not until July 27, 2023, over a year after the Complaint was filed, that Defendants first sent Plaintiffs a demand for arbitration. (Tabor Decl. ¶ 11.) This conduct was knowing, intentional, and a waiver of any right to arbitrate. *Stafford*, 2020 WL 905606, at *5 (holding that "a party's extended silence and delay

---

[1] By an agreement of counsel made to facilitate discovery in this case, Plaintiffs do not argue that participation in the Rule 26 conference and related activity such as service of disclosures, filing the Joint Report, meeting and conferring about discovery responses, and entry of the protective order constitute a waiver of any right to arbitrate. (Tabor Decl. ¶ 3.)

Case No. 2:22-cv-03391-SSS (RAOx)   – 5 –

in moving for arbitration may indicate a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate") (quoting *Van Ness Townhouses*, 862 F.2d at 759) (cleaned up).

Nor does the fact that an additional Plaintiff, Mr. Brandon Miller, joined the Third Amended Complaint somehow revive any right to arbitrate Defendants might have had. As the Northern District of California explained, a defendant who knowingly seeks dismissal of class claims waives arbitration as to all class members, regardless of whether a class has been certified:

> [W]hen, as here, a defendant brings a motion aimed at vindicating its system-wide practices, then it is effectively seeking class-wide relief, even if a class has not yet been certified. Bringing such a system-wide motion on the merits in a court is inconsistent with arbitration on the merits. Once a defendant seeks system-wide vindication of its practices in a court and on the merits, therefore, it has waived any right to compel an arbitration on the merits. And, this is true regardless of whether a class has yet been certified. To hold otherwise would allow a defendant to litigate the systemwide merits of an individual case, see which way the judicial winds are blowing, and then, if the winds seem unfavorable, reverse field and demand arbitration against all absent class members once a class is certified.

*Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 293 (N.D. Cal. 2022). Because Defendants availed themselves of the jurisdiction of this Court, and only changed course to seek arbitration after receiving unfavorable rulings on their motions to dismiss, the Court should find that Defendants waived any right to arbitrate. "To hold otherwise would allow parties to take a 'wait and see approach" and feign ignorance of arbitration rights just until after an unfavorable court ruling is imposed." *Stafford*, 2020 WL 905606, at *5.

### B. Defendants are not parties to, nor third-party beneficiaries of, the BHSPSC Arbitration Agreements.

Even if Defendants had not waived arbitration, the Court should deny their motion because Defendants are not signatories to any arbitration agreement with Plaintiffs. The BHSPSC Arbitration Agreements identify the parties to the agreements as the "Patient," i.e. Plaintiffs, and "BHSPSC," the surgical center where Plaintiffs' procedures were performed. (ECF No. 77-2 at 6, 8, 10 & 12.) Nowhere do the agreements mention Dr. Elist or any other Defendant in this action. Nor do the agreements contain any language extending the right to compel arbitration to BHSPSC's licensed physicians or contractors, such as Dr. Elist. *Id*. Defendants nevertheless assert that Dr. Elist is entitled to enforce the agreements as a party and/or that all Defendants are entitled to enforce the agreements as third-party beneficiaries. (ECF No. 77 at 9–12.) Because Defendants fail to show that they satisfy any exception to the "usual rule that ***only a signatory*** to an arbitration agreement is entitled to enforce it, *Ford Motor Warranty Cases*, 89 Cal. App. 5th at 1342 (emphasis added), the Court should deny Defendants' Motion to Compel Arbitration.

### 1. Dr. Elist is not a party to the BHSPSC Agreements and may not enforce them as an undisclosed principal.

Defendants contend that Dr. Elist is a party to the BHSPSC Agreements, (ECF No. 77-2 at 9–10), and Dr. Elist's Declaration states that "[e]mployees of Beverly Hills Premium Surgery Center, Inc. signed each of those agreements as my authorized representatives." (ECF No. 77-2 ¶ 12.) On the signature line, however, the agreements plainly identify BHSPSC, not Dr. Elist, as the "Physician, Medical Group, or Association" that is party to the agreements. (ECF No. 77-2 at 6, 8, 10 & 12.) Dr. Elist's statement that he is "the physician identified in the agreement" is thus plainly contradicted by the face of the documents themselves and should not be

credited. *See Tautges v. Glob. Datacenter Mgmt., Inc.*, No. 09-cv-0785, 2010 WL 3384980, at *4 (S.D. Cal. Aug. 26, 2010) (refusing to consider party's declaration as extrinsic evidence of meaning of agreement, finding that such parole evidence is not admissible where it "directly contradicts the language of the contract"). To the extent Defendants argue that Dr. Elist should be entitled to enforce the agreements as an undisclosed principal,[2] California law does not allow an undisclosed principal to enforce an arbitration agreement where, as here, the claims sought to be arbitrated do not "ar[i]se out of the contractual relationship between the parties." *Ford Motor Warranty Cases*, 89 Cal. App. 5th at 1340.

*Ford Motor Warranty Cases* is exactly on point. In that case, plaintiffs had signed a sale contract with an automobile dealer containing an arbitration agreement. *Ford Motor Warranty Cases*, 89 Cal. App. 5th at 1329. They later sued Ford Motor Company ("Ford"), which was "not a party to the sale contracts and [was] not named in the sale contracts." *Id.* Ford argued, however, that because the plaintiffs had alleged that the dealer acted as Ford's agent, Ford was entitled to compel arbitration as an undisclosed principal. *Id.* at 1331. Applying California law, the court found that a non-signatory defendant may enforce an arbitration agreement as an undisclosed principal only where the plaintiff's claims "ar[i]se out of the contractual relationship between the parties." *Id.* Because "any nexus with the sale contracts, and thus the right to compel arbitration, [was] lacking," the court found that even if the dealer had acted as Ford's agent, Ford could not compel arbitration as an "undisclosed principal." *Id.* at 1342. Similarly here, there is no nexus between the BHSPSC Arbitration Agreements and Plaintiffs' claims. Plaintiffs do not sue BHSPSC, do not assert claims that "rest on an agency relationship," *id.*, and do not

---

[2] While Defendants' Memorandum does not use the phrase "undisclosed principal," this is the only legal theory consistent with Defendants' assertion that BHSPSC acted as Dr. Elist's agent and the plain fact that the BHSPSC Agreements do not identify or refer to Dr. Elist. (*See* ECF No. 77-3 ¶ 2 (stating that BHSPSC and its employees "function as agents for physicians").)

assert claims for breach of the contract containing the arbitration agreement. As in *Ford Motor Warranty Cases*, "any nexus with the [] contracts, and thus the right to compel arbitration, is lacking." *Id.* Dr. Elist is therefore not entitled to compel arbitration as an undisclosed principal. *Id.* at 1342–43.

### 2. Defendants may not compel arbitration as third-party beneficiaries of the BHSPSC Arbitration Agreements.

Because the BHSPSC Arbitration Agreements were not made "expressly for [the] benefit," *Ngo v. BMW of North America, LLC*; 23 F.4th 942, 945 (9th Cir. 2022), of Defendants or any third party, neither may Dr. Elist nor any other Defendant enforce the BHSPSC Arbitration Agreements as third-party beneficiaries. California law establishes a three-part test for third-party beneficiary status. In order to enforce a contract, a third party must show that:

1. the third party would in fact benefit from the contract;
2. a motivating purpose of the contracting parties was to provide a benefit to the third party; and
3. permitting the third party to enforce the contract "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties."

*Ngo*, 23 F.4th at 946 (quoting *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (Cal. 2019)). Here, Defendants cannot show that a "motivating purpose" of the contracting parties was to provide a benefit to Dr. Elist or the other Defendants, because the BHSPSC Arbitration Agreements do not contain any mention of these third parties. While Dr. Elist asserts that he is the "physician" identified in the agreements, the agreements themselves plainly identify the "Physician, Medical Group, or Association" as BHSPSC. *See* Section III.A.2 *supra*. Thus, the "partners, associates, association, corporation or partnership, and the employees, agents and estate of any of them," (ECF No. 77-2 at 6, 8, 10 & 12, art. 2), mentioned in the agreement are

the partners, associates, etc. of BHSPSC, not those of Dr. Elist. And Dr. Elist does not claim to be an agent of BHSPSC. Rather, he claims to be its principal. *See* ECF No. 77-3 ¶ 2 (stating that BHSPSC and its employees "function as agents for physicians"). The BHSPSC Arbitration Agreements thus show no intent to benefit any of the Defendants in this action.

The Ninth Circuit's recent decision in *Ngo* is on point. In *Ngo*, the district court granted BMW's motion to compel arbitration, finding that BMW was a third-party beneficiary to the plaintiff's purchase agreement with an automobile dealer, which contained an arbitration clause. *Ngo*, 23 F.4th at 945. The Court of Appeals reversed. The Ninth Circuit reasoned that the plain language of the arbitration agreement expressly covered only the plaintiff, the dealership, and any assignee of the dealership—not BMW. *Id.*; *see also Ngo*, 89 Cal. App. 5th at 1339–40 (holding that Ford could not compel arbitration agreement as third-party beneficiary where there was "no indication that a benefit to [Ford] was the signatories' 'motivating purpose'" and "allowing [Ford] to enforce the arbitration provision as a third party beneficiary would be inconsistent with the 'reasonable expectations of the contracting parties'"). Similarly here, the BHSPSC Arbitration Agreements expressly mention only BHSPSC and its partners, associates, etc., not Dr. Elist or any other Defendant. (ECF No. 77-2 at 6, 8, 10 & 12, art. 2.)

Furthermore, the agreements state that "both parties"—i.e. exactly two parties—"are giving up their constitutional right" to have disputes decided in court. (*Id.* art. 1.) These are plainly form agreements that BHSPSC drafted, and if BHSPSC had wished to include Dr. Elist and/or any of the other Defendants as third-party beneficiaries, it could easily have done so. *See Ngo*, 23 F.4th at 948 ("BMW's relative proximity to the contract confirms that the parties easily could have indicated that the contract was intended to benefit BMW—but did not do so."); *see also Ford Motor Warranty Cases*, 89 Cal. App. 5th at 623 ("If the signatories had

intended to benefit [Ford], such a purpose would have been easy to articulate … But they did not."); *Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 514 (Cal. 2016) (holding that "ambiguities in written agreements are to be construed against their drafters") (citing CAL. CIV. CODE § 1654; REST. 2D CONTRACTS § 206).

Defendants' reliance on the *Harris* case is misplaced. (*See* ECF No. 77 at 10.) In *Harris*, the plaintiffs brought a malpractice action against a hospital and a physician employed by the hospital. *Harris v. Superior Court*, 188 Cal. App. 3d 475, 477 (Cal. Ct. App. 1986). The plaintiff's prepaid health services enrollment agreement with the hospital agreed to arbitrate disputes against the hospital and its "employees or other contracting health professionals, pharmacies, or their employees." *Id.* The record showed that the physician was an employee of the hospital. *Id.* at 478. Thus, the court found that "the enrollment form arbitration clause, which specifically named [the hospital] and its contracting health professionals, gave [the physician] the contractual right to compel arbitration of a malpractice claim against him." *Id.* Here, by contrast, Dr. Elist does not claim to be an employee or agent of BHSPSC, and the plain language of the BHSPSC Arbitration Agreements does not extend any right to arbitrate to licensed physicians with privileges at the surgical center. (ECF No. 77-3 (stating that Dr. Elist is a "licensed physician with privileges at the Surgery Centers"); *see also Franklin v. Santa Barbara Cottage Hospital*, 82 Cal. App. 5th 395, 409 (2022) (finding physician was not agent of hospital). Because neither Dr. Elist nor any other Defendant is a signatory to the BHSPSC Arbitration Agreements, nor are they entitled to enforce them as undisclosed principals or third-party beneficiaries, this Court should deny Defendants' Motion to Compel Arbitration.

## C. Plaintiffs' claims are outside the scope of the BHSPSC Arbitration Agreements.

Finally, this Court should also deny Defendants' motion for the independent reason that the BHSPSC Arbitration Agreements are expressly limited to "medical malpractice" disputes and do not cover Plaintiffs' claims for false advertising and consumer fraud. The agreements state that: "any dispute as to ***medical malpractice***, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered, will be determined by submission to arbitration … " (ECF No. 77-2 at 6, 8, 10 & 12, art. 1 (emphasis added).) The agreements are based on a form prescribed by law for agreements to arbitrate professional negligence claims against health care providers. CAL. CODE CIV. P. § 1295 (a)–(b). That statute defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death … " CAL. CODE CIV. P. § 1295 (g)(2). This definition is consistent with the dictionary definition of "medical malpractice" as a "doctor's failure to exercise the degree of care and skill that a physician or surgeon of the same medical specialty would use under similar circumstances." Malpractice, BLACK'S LAW DICTIONARY (11th ed. 2019).

Plaintiffs here do not assert medical malpractice claims. Nor do they seek to recover personal injury damages. Instead, they bring claims under California's False Advertising Law, Unfair Competition Law, and Consumer Legal Remedies Act for false advertising and material omissions in Defendants' marketing of the Penuma device and procedure. (ECF No. 71 ¶¶ 100–41); *see Mannick v. Kaiser Foundation Health Plan, Inc.*, No. 03-cv-5905, 2005 WL 3454134, at *5 (N.D. Cal. Dec. 16, 2005) (holding that claims against health plan were outside scope of arbitration agreement where "[p]laintiff has asserted no claim for medical or hospital

malpractice"). While it is true that Dr. Elist has been accused of gross negligence and incompetence by the California Medical Board, (*see* ECF No. 77 at 9), Plaintiffs, as masters of their Complaint, have chosen not to bring medical malpractice claims against him. The BHSPSC Arbitration Agreements do not agree to arbitrate all disputes "involving facts that could give rise to claims for medical malpractice" or "related to medical malpractice." Rather, the agreements cover only "medical malpractice" disputes. (ECF No. 77-2 at 6, 8, 10 & 12, art. 1.) Because BHSPSC chose to limit the arbitration agreements to medical malpractice disputes, this Court should enforce the agreements as written. *Howsam,* 537 U.S. at 83 (holding that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit") (quoting *Steelworkers*, 363 U.S. at 582).

### D. The Court should not allow Defendants' meritless arbitration motion to delay discovery in this case.

The Court should also deny Defendants' request that the Court stay all discovery while it decides this Motion. (ECF No. 77 at 13.) The parties have met and conferred and made considerable progress regarding discovery in this action. They have made their Initial Disclosures and served written discovery on each other. (Tabor Decl. ¶¶ 1, 5–6.) They have also served objections and responses to this written discovery. (Tabor Decl. ¶¶ 2, 7–8.) They have agreed to entry of a Protective Order allowing confidential documents to be produced. (ECF No. 76.) In addition, they have met and conferred regarding Defendants' written discovery responses to narrow the issues in dispute and agreed to proposed search terms for Defendants' Electronically Stored Information ("ESI"). (Tabor Decl. ¶¶ 9–10, 13–16.) Threatening this progress, at a meet and confer on August 21st and 22nd, 2023, Defendants' counsel stated that Defendants would not produce the documents they had previously agreed to produce subject to the protective order, nor would they

make any other formal production in response to Plaintiffs' discovery requests, while their Motion to Compel Arbitration was pending. (Tabor Decl. ¶¶ 14, 16.) Defendants have not cited, nor are Plaintiffs aware of, any authority that requires a stay of discovery while a motion to compel arbitration is pending. (*See* ECF No. 77 at 13.) Plaintiffs therefore respectfully request that the Court deny the request to stay discovery so that the progress of this action may not be unnecessarily hindered by Defendants' groundless motion.

## IV.  CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to Compel Arbitration.

Dated: September 5, 2023          Respectfully submitted,

By: */s/ Michael A. Caddell*
Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
CADDELL & CHAPMAN
P.O. Box 1311
Monterey CA 93942
Tel.: (713) 751-0400
Fax: (713) 751-0906

*Attorneys for Plaintiffs*