Amir M. Nassihi (SBN: 235936)
anassihi@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street Suite 2300
San Francisco, California 94105
Telephone: (415) 544-1900
Facsimile: (415) 391-0281

Michael L. Mallow (SBN: 188745)
mmallow@shb.com
Mayela C. Montenegro-Urch (SBN: 304471)
mmontenegro@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, California 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

*[Additional Counsel on Signature Page]*

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| EDWARD PEÑA and BRANDON MILLER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL MEDICAL DEVICES, INC., MENOVA INTERNATIONAL, INC., GESIVA MEDICAL, LLC, JAMES J. ELIST M. D., a Medical Corporation, and Dr. James ELIST<br><br>Defendants. | Case No. 2:22-cv-03391-SSS (RAOx)<br><br>Judge: Hon. Sunshine S. Sykes<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>[Filed concurrently with Declaration of Amir M. Nassihi in Support of Reply to Motion to Compel Arbitration and Stay Proceedings] |

Plaintiffs do not deny that they signed the four separate Physician-Patient Arbitration Agreements in connection with their Penuma-related surgeries performed by Dr. Elist. They do not dispute that the Federal Arbitration Act applies, or argue that agreements are invalid under California law.[1] Plaintiffs nevertheless ask this Court to refuse to give effect to the agreements, arguing that: (1) Defendants are not parties and have no right to enforce them; (2) the agreements do not cover their claims; and (3) Defendants waived their rights to compel both Plaintiffs to arbitrate. Plaintiffs' arguments ignore the facts and evidence set out in the Motion, the plain language of the agreements, and the law. Defendants' Motion should be granted.

## ARGUMENT

### I. Defendants Are Parties or Third-Party Beneficiaries Entitled to Enforce the Agreements, Which Extend to The Claims Made In This Case.

"When interpreting contracts, the language used controls if it is clear and explicit," and California courts "must . . . view the language of a contract as a whole, avoiding a piecemeal, strict construction approach." *Segal v. Silberstein*, 156 Cal. App. 4th 627, 633 (2007). "In determining the scope of an arbitration [agreement], [t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made." *See Titolo v. Cano*, 157 Cal. App. 4th 310, 316–17 (2007) (citations omitted). Courts should avoid interpretations that would "result in absurdity." *Segal*, 156 Cal. App. 4th at 633 (cleaned up).

**A. All Defendants Are Entitled to Enforce the Agreements.**

Defendants may enforce the agreements as parties, third-party beneficiaries, or alleged participants in a "joint enterprise" (an argument Plaintiffs ignore).

First, Dr. Elist *is* a party to the agreements. Plaintiffs argue that because the agreements were signed on Dr. Elist's behalf by his authorized representatives – employees of the surgery centers where the surgeries were performed – that the centers,

---

[1] *See* Pls.' Opp. at 1, 7–13 (acknowledging the existence of the agreements, but contending that only Plaintiffs and the surgery centers, and not Dr. Elist, were parties).

rather than Dr. Elist, are the only parties to the agreements other than Plaintiffs. This contradicts the plain language of the agreements, ignores the circumstances under which they signed, and would achieve absurd results. Dr. Elist was the physician who provided medical services to each Plaintiff on the dates they signed the agreements entitled "PHYSICIAN-PATIENT ARBITRATION AGREEMENT." *See* Elist Decl. ¶¶ 9–13 & Exs. 1–4; Maranan Decl. ¶¶ 4–7 & TAC ¶¶ 28, 39, 43, & 45 (alleging that Dr. Elist performed Plaintiffs' surgeries). While Plaintiffs dispute Defendants' sworn declarations that Dr. Elist was the physician referred to in the agreements, and that surgery center employees signed as his authorized representatives, they present no contrary evidence, and they do not identify – neither in their Opposition nor their Complaint – *any* other physician who provided medical services to them on those dates. They also ignore that Plaintiffs signed these agreements upon entering surgery centers to have surgical procedures performed by *their physician*, Dr. Elist, who they knew would be performing their procedures. Dr. Elist was certainly not "undisclosed," as Plaintiffs contend.[2] Each agreement was signed by surgery center employees above a line that reads "Physician's *or Authorized Representative's* Signature," indicating that it was being signed on behalf of the physician (*see* Elist Decl. ¶¶ 9–13, & Exs. 1–4)[3], just as each Plaintiff-Patient signed on a line that required the "Patient or *Patient Representative's Signature.*" *Id.* That does <u>not</u> mean, as Plaintiffs argue (*see* Pls.' Opp. at 9), that the non-physician surgical center entities, rather that the surgeon Plaintiffs

---

[2] Plaintiffs' reliance on *Ford Motor Warranty Cases* is inapposite. *Ford* addressed whether plaintiffs' allegations of an agency relationship, standing alone, were sufficient for a *nonsignatory* to compel arbitration. *Ford Motor Warranty Cases*, 89 Cal. App. 5th 1324, 1341 (2023) (defendant "does not admit that plaintiffs' dealers are its agents"). In contrast, here, Defendants have submitted evidence establishing the arbitration agreements were signed on behalf of Dr. Elist as the physician-party, and Plaintiffs have failed to submit any evidence otherwise.

[3] California decisions have recognized that a physician is a party to precisely the sort of arbitration agreement at issue here where signed by the physician's authorized representative. *See, e.g.*, *Titolo*, 157 Cal. App. 4th at 317 ("In connection with her petition to compel arbitration [physician] Cano submitted a copy of a physician-patient arbitration agreement signed by [patient] Titolo and by Cano's authorized representative."); *Scott v. Yoho*, 248 Cal. App. 4th 392, 397 (2016) ("The arbitration agreements are signed by Dr. Yoho's authorization and [the patient] Ms. Parker.").

were at the centers to see, are the "physicians" identified in the agreements. Both the title of the agreements and their provisions make clear that the parties are the patient and the physician providing them medical services. *See* Elist Decl., Exs. 1–4 (stating that the agreements bind parties whose claims that "may arise out of or relate to treatment or service provided by the *physician*," that they apply to "[a]ll claims . . . against the *physician*," excepting claims "by the *physician* or patient" related to collection of medical fees, and providing that the agreement could be revoked by the patient within 30 days by "written notice delivered to *the physician*[.]"). The Court should reject Plaintiffs' interpretation, which ignores the circumstances in which Plaintiffs signed, would require it to read "physician" to mean "non-physician surgical center," and would absurdly require a patient to revoke an agreement with a surgical center by delivering written notice to their (according to Plaintiffs) non-party physician. *See Titolo*, 157 Cal. App. 4th at 316-17; *Segal*, 156 Cal. App. 4th at 633.

      Next, based solely on the misrepresentation that Dr. Elist is not the physician referenced in the agreements, Plaintiffs argue that neither Dr. Elist nor any other Defendant is a third-party beneficiary that may enforce the agreements. *See* Pls.' Opp. at 9. But even if Dr. Elist were not a party, the agreements provide that "all claims" by "all parties whose claims may arise out of or relate to treatment or service provided by the *physician* [Dr. Elist]" must be arbitrated, including claims "against the *physician*, and *the physician's* partners, associates, association, corporation or partnership, and the employees, agents and estates of any of them[.]" *See* Elist Decl., Exs. 1–4 at Article 2. Plaintiffs do not dispute that Defendants James J. Elist M.D., a Medical Corporation, International Medical Devices, Inc., and Menova International, Inc. are all "corporations" of Dr. Elist, their owner and sole shareholder. *See id.* ¶ 3. For these reasons and those in Defendants' Motion, and based upon the circumstances of the agreements and their plain language, the *Goonewardene* factors are met.[4] Unlike the

---

[4] *See* Defs.' Mot. at 10–11 (citing *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830–831 (2019) and *Ngo v. BMW of N. Am., LLC*, 23 F. 4th 942, 946 (9th Cir. 2022)). Here, unlike in *Ngo*, where only automobile dealer parties and not the movant auto

1 cases cited by Plaintiffs, the agreements *do* identify the third parties entitled to enforce them – the physician and his corporations and agents – which was the entire (not just motivating) purpose of the agreements. And Plaintiffs fail to respond to, and thus implicitly concede that, based upon their undifferentiated allegations and their "joint enterprise" theory, all Defendants are equally entitled to enforce the agreements. *See* Defs.' Mot. at 11–12 (citing *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 893 (1991) and *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 788, (2017)).

Plaintiffs' claims are claims "against the physician" or his "partners, associates, association[s], corporation[s] or partnerships[s]." *See id.* ¶¶ 9–13, Exs. 1–4 (at Article 2). Defendants may compel arbitration as a party (in the case of Dr. Elist) as a third-party beneficiary, or based on Plaintiffs' allegations of "joint enterprise" liability.

### B. Plaintiffs' Claims Are Within the Scope of the Agreements

Next, Plaintiffs argue their claims fall outside the scope of the agreements because they do not assert "medical malpractice" claims for personal injuries. They note that the agreements they signed are based on forms prescribed by California law (Cal. Code Civ. P. § 1295) and argue that because their claims do not fall within the definition of "professional negligence" within that statute, they fall outside of the agreements. But the phrase "professional negligence" does not appear in the agreements, and Plaintiffs ignore the definition of "medical malpractice" in the agreements. The agreements define medical malpractice as "any dispute . . . as to whether any medical services rendered under this contract were **unnecessary** or **unauthorized** or were improperly, negligently, or incompetently rendered" shall be arbitrated. *See* Elist Decl. ¶¶ 9–13, Exs. 1–4 (at Article 1) (emphasis added). By their plain terms, the agreements are not limited to professional negligence or personal injury claims.

California courts have rejected this precise argument. In *Titolo*, a patient sued her

---

manufacturers were identified in the agreements, Dr. Elist – the "physician," is *repeatedly* mentioned, starting with the title. Further, the agreements here are not sales contracts with arbitration clauses, like in *Ngo*, but rather agreements to arbitrate claims related to the Penuma surgeries Dr. Elist would perform on Plaintiffs; the nexus to the claims made here is therefore clear. *Id.* at 945–50.

physician for breach of fiduciary duty, violation of privacy rights and intentional infliction of prospective economic damages, and later added a claim for negligence – all based upon the physician's statements to the patient's insurer that the patient was not disabled. 157 Cal. App. 4th at 315. The plaintiff did not claim any personal injuries. *Id.* As here, the patient signed a Physician-Patient Arbitration Agreement that included the same provisions here, countersigned by an authorized representative of the physician. *Id.* at 314, 317. On appeal, after the trial court denied two motions to compel arbitration, the Court of Appeal reversed and rejected the plaintiff's argument that § 1295's definition of "professional negligence," which was absent from the agreement, limited its scope. *Id.* at 318 ("We cannot read more into the parties' arbitration agreement than it provides."). The Court found that the physician's communication of test results to a patient's disability insurer – the focus of the plaintiff's claims – was "an ordinary and usual part of a physician's provision of medical services to his or her patient," and therefore within the definition of "medical malpractice" claims in the agreement. *Id.* at 321–322 (citing *Central Pathology Service Med. Clinic, Inc. v. Superior Court*, 3 Cal. 4th 181, 191–193 (1992)). The *Titolo* court found that medical malpractice claims, as defined in § 1295 (and in the Agreements here) are not limited to claims for professional negligence or personal injury, and could extend to claims based upon "theories such as battery, breach of contract, and deceit." *Id.* at 321 (citing *Herrera v. Superior Court*, 158 Cal. App. 3d 255, 261 (1984)).[5]

Here, *all* of Plaintiffs' claims stem from their allegations that the Penuma surgeries performed on them by Dr. Elist were unnecessary and had "no value," that the Penuma device and procedure were either unauthorized or not safe and effective, that statements by their physician Dr. Elist and other Defendants (they allege are engaged in a joint enterprise) related to Plaintiffs' surgeries were false or misleading, and that

---

[5] *See also Herrera*, 158 Cal. App. 3d at 262 ("Plaintiff's interpretation of the statute would render meaningless the definition of malpractice given in the arbitration provision, contrary to the rule of statutory interpretation that significance should be given to each word of a statute.").

Dr. Elist's performance of those procedures amounted to "gross negligence" or "incompetence" that fell below the standard of care. *See, e.g.*, TAC ¶¶ 1–5, 18–22, 28–32, 38–47, and 87. Communications to patients and prospective patients about the risks and benefits of medical procedures, and decisions about whether to perform procedures on certain patients are more a core part of a physician's ordinary provision of medical services than the communication of test results to disability insurers in *Titolo*. Every one of Plaintiff's claims relate to medical services rendered by Dr. Elist, and whether they were unauthorized or unnecessary. They all fall within the only definition of "medical malpractice" that matters here – the one in the agreements Plaintiffs signed.

## II. Defendants Have Not Waived Their Right to Compel Arbitration

Finally, Plaintiffs argue that Defendants waived their rights to compel arbitration as to the October 2, 2020 agreement signed by Plaintiff Peña and the November 1, 2019, November 9, 2020, and March 5, 2021 agreements signed by Plaintiff Miller. As the parties asserting waiver, each Plaintiff must prove that each Defendant had "(1) knowledge of an existing right to compel arbitration and (2) [took] intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). The Ninth Circuit considers the "totality of the parties' actions" to determine "whether [they] indicate a conscious decision to seek judicial judgment on the merits of the arbitrable claims," by "actively litigat[ing] the merits of a case for a prolonged time period[.]" *Newirth by & through Newirth v Aegis Senior Communities, LLC*, 931 F.3d 935, 939 (9th Cir. 2019) (abrogated on other grounds).[6] Even where a party seeking to compel arbitration has participated in litigation, this is not a waiver of arbitral rights if the party's purpose was to "avoid or frustrate the litigation rather than a strategic decision to actively litigate[.]" *Id.* (internal citation omitted).

Here, neither Plaintiff Peña nor Plaintiff Miller can meet their burden to prove both required elements as to each Defendant. With respect to Peña's claims, Plaintiffs

---

[6] While *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, (2022) eliminated the requirement of prejudice, Ninth Circuit cases applying the other two "elements remain[] good law following *Morgan*." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023).

argue that Defendants waived their right to arbitrate by filing two motions to dismiss, by serving responses to Plaintiffs' written discovery requests in October 2022, and by waiting "over a year" before moving to compel arbitration. Plaintiffs overstate the litigation activity that has occurred, and misapply Ninth Circuit law on waiver.

First, the circumstances surrounding the filing of Defendants' motions to dismiss Peña's claims do not demonstrate that each Defendant knew of an existing right to arbitrate and decided to actively litigate those claims on the merits. Defendants moved to dismiss Peña's First Amended Complaint in August 2022 (Dkt. Nos. 16, 31) for failure to adequately plead his claims, including failing to plead facts showing joint enterprise liability. *See* Dkt. No. 31 at 12.[7] On January 10, 2023, the Court denied Defendants' motion as to Plaintiffs' joint enterprise liability theory, and on January 20, 2023, Peña filed a Second Amended Complaint ("SAC") making the same allegations. *See* Dkt. Nos. 50, 51. Notably, Plaintiff's joint enterprise allegations are the basis for certain Defendants' right to compel arbitration under the October 2, 2020 agreement Peña signed. Plaintiff cannot show that every Defendant knew of an existing right to compel arbitration "over a year" ago, or at any time before the Court accepted Peña's position that he had adequately pled joint enterprise liability. Dkt. 50 at 5; *see e.g., Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 695–97 (9th Cir. 1986) (failure to assert right to arbitration is not waiver where filing of motion to compel earlier would have been futile).[8] And Defendants' motion to dismiss the equitable claims in Peña's SAC is not evidence of an intent to litigate his claim on the merits, because a motion to dismiss based upon lack of jurisdiction, including Article III subject matter jurisdiction and equitable jurisdiction, does not require an analysis of the merits of a claim. *See,*

---

[7] *See Chartwell Staffing Servs., Inc. v. Atlantic Sols. Group, Inc.*, No. 8:19-cv-00642-JLS-JDE, 2020 WL 620294, at *9 (C.D. Cal. Jan. 9, 2020) (finding motion to dismiss arguing that claims had been deficiently pled, even combined with the taking of depositions, a motion to disqualify counsel were insufficient to find waiver and did not demonstrate "engaging in strategic, active litigation.").

[8] *See also Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1130 n.3 (C.D. Cal. 2011) ("Plaintiff cites no authority suggesting that a party must make all possible challenges to an existing law or risk waiving any rights[.]")

*e.g.*, *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074–75 (9th Cir. 2013); *Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1314–15 (9th Cir. 2022).[9]

Second, Peña dramatically overstates the discovery that has taken place. For example, the October 10, 2022 responses to written discovery referenced in Plaintiffs' Opposition consisted entirely of objections that each request, interrogatory, and request for admission was prematurely and improperly served before the parties had held a Rule 26(f) Conference – a procedural objection that, if anything, evinces a purpose to "avoid or frustrate the litigation," and not a "strategic decision to actively litigate [and] forgo . . . arbitration." *Newirth*, 931 F.3d at 939; Sep. 19, 2019 Reply Decl. of Nassihi, at ¶¶ 1–2, and Ex. 1 (IMD's Oct. 10, 2022 Responses to Requests for Production).

Under Ninth Circuit law, Peña cannot meet his burden to show that Defendants waived their right to arbitrate. "[E]ven where [a] party seeking arbitration has filed a motion to dismiss on the merits, the Ninth Circuit has not found waiver without prolonged delays and 'significant additional litigation activity.'" *Colores v. Ray Moles Farms, Inc.*, No. 1:21-cv-00101-JLT, 2023 WL 2752379, at *4 (E.D. Cal., Mar. 31, 2023) (quoting *United Specialty Ins. Co. v. Clean & Sober Media LLC*, No. 2:20-cv-02765-RGK-KS, 2021 WL 362300, at *2 (C.D. Cal. Apr. 16, 2021)). That "additional activity" may be present in some cases cited by Plaintiff, but not here. Defendants did not affirmatively represent that they were "better off" in federal court than in arbitration, as did the defendants in *Martin*, nor did they serve substantive answers to discovery or conduct a deposition.[10] Unlike *Van Ness Townhouses*, this case has not proceeded for two years to the entry of a pre-trial conference order; the parties here only filed their

---

[9] Nor does Defendants' Answer to Peña's SAC constitute waiver. *Ontiveros v. Zamora*, No. Civ. S-08-567-LKK, 2013 WL 593403, *9–10 (E.D. Cal. Feb. 14, 2013) is not to the contrary, as it deals with whether the motion for judgment on the pleadings in that case was inconsistent with a right to arbitrate. Moreover, in this case, Defendants' Answer to the SAC was filed on May 12, 2023, over a month after Defendants provided the arbitration agreement Peña signed to his counsel. *See* Dkt. No. 62; Tabor Decl. at ¶ 3.

[10] *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016). Following the objection-only responses Plaintiffs cite as evidence of waiver, Defendants agreed to serve substantive responses to written discovery, subject to Plaintiffs' agreement that those responses would not constitute waiver. *See* Tabor Decl. (Dkt. No. 79-1) at ¶ 3.

Joint Report of Rule 26(f) Conference on July 7, 2023, shortly before Defendants moved to compel. *See* Dkt. No. 67.[11] Defendants did not file two motions to dismiss on merits issues, much less move for summary judgment on the merits of Peña's claim, as the defendant in *Freitas* did, and Defendants did not wait a year after the Court's denial of their motion to dismiss before moving to compel arbitration, like the defendant in *Stafford*.[12] Simply stated, Defendants have not waived their right to arbitrate Pena's claims. *See Colores*, 2023 WL 2752379 at *4–5 (no waiver despite filing motions to dismiss and counterclaims, and agreement to mediate on a classwide basis, because those actions "evince[d] an intent to merely frustrate the litigation"); *Hansber v. Ulta Beauty Coms., LLC*, 640 F. Supp. 3d 947, 955–957 (E.D. Cal. 2022) (no waiver despite removing case, filing partially granted motion to dismiss and motion to join parties, responding to discovery, and two year delay before filing arbitration motion).

Plaintiff Miller's waiver argument fails for all of the reasons above, but to a greater extent. He first filed claims against Defendants on July 19, 2023, less than a month before Defendants moved to compel arbitration. Plaintiffs' Opposition identifies no activity after that point inconsistent with the right to arbitrate. Instead, they argue that Defendants somehow waived their rights to arbitrate Miller's claims by litigating against Peña. But, even if Defendants had waived their rights to arbitrate against Peña (they have not), Plaintiffs cite to no authority that would extend that waiver to the three separate arbitration agreements Miller signed. In fact, the authority they selectively quote makes clear that no waiver occurred. *Roman v. Jan-Pro Franchising International, Inc.*, 342 F.R.D. 274 (N.D. Cal. Aug. 2, 2022), did not even involve a motion to compel arbitration. Rather, the defendant opposed a motion for class certification, arguing that the named plaintiffs' claims could not satisfy Rule 23's typicality and adequacy requirements because it planned to enforce its rights to arbitrate

---

[11] *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988).
[12] *Freitas v. Cricket Wireless, LLC*, No. C-19-07270-WHA, 2022 WL 3018061, at *2 (N.D. Cal. Jul. 29, 2022); *Stafford v. Rite Aid Corp.*, No. 17-cv-1340-AJB-JLB, 2020 WL 905606, at *2 (S.D. Cal. Feb. 25, 2020).

against absent class members, despite having waived its right to arbitrate against named plaintiffs. *Id.* at 290–91. The court found that defendant had waived its right to compel arbitration as to class members because it had made efforts to litigate the merits of the case "on a class-wide basis," including by filing a motion for summary judgment with arguments directed at absent class members. *Id.* at 291, 292. But here, Defendants' motions were expressly directed to Peña's individual claims.[13] As the court in *Roman* specifically noted, just before the portion block-quoted by Plaintiffs: "When all a defendant does is bring a motion aimed at the individual circumstances of a single, named plaintiff, it would perhaps be unfair to say that that motion amounts to a class-wide motion or that a class-wide waiver of arbitration has occurred." *Id.* at 293.

Neither Plaintiff has satisfied his burden to show that any Defendant has waived its right to compel arbitration of his claims. The Court should grant Defendants' Motion.

## III. The Court Should Stay This Case Pending Its Resolution of This Motion

For good reason, courts routinely stay discovery pending ruling on motions to compel arbitration. If Defendants' Motion is granted, discovery will proceed in arbitration, rather than in federal court. A stay while the Court determines where discovery will proceed will conserve the resources of the parties and the Court. *See, e.g.*, *Galaxia Elecs. Co. v. Luxmax U.S.A.*, No. LA-cv-16-05144-JAK (GJSx), 2017 WL 11566394, at *2 (C.D. Cal. Dec. 28, 2017); Defs.' Mot. at 14 n.3.[14]

## CONCLUSION

Defendants' Motion to compel arbitration of Peña's and Miller's individual claims, and request for an immediate stay, should be granted.

---

[13] *See also Hill v. Xerox Bus. Servs. Inc.*, 59 F. 4th 457, 474–76 (9th Cir. 2023) (waiver as to class members only where defendant engaged in "extensive discovery on unnamed parties to this case," including discovery related to "any Putative Class member," and motion for summary judgment as to unnamed class members' claims).

[14] *Cf. Coinbase, Inc. v. Bielski*, 599 U.S. 736, 5–6 (2023) ("Absent an automatic stay [on appeal] . . . many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along."). These same considerations apply to a pending motion to compel.

Dated: September 19, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ *Amir M. Nassihi*

Amir M. Nassihi
Michael L. Mallow
Jennifer M. Stevenson
Mayela C. Montenegro-Urch

Jennifer M. Stevenson (admitted *pro hac vice*)
Evan D. Montgomery (admitted *pro hac vice*)
jstevenson@shb.com
emontgomery@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone:  (816) 474-6550
Facsimile:  (816) 421-5547

Attorneys for Defendants

## **CERTIFICATE OF COMPLIANCE PER RULE 11-6.2**

The undersigned, counsel of record for Defendants International Medical Devices, Inc., Menova International, Inc., Gesiva Medical, LLC, James J. Elist, M.D., a Medical Corporation, and Dr. James Elist, certifies that this brief does not exceed ten (10) pages in length, which complies with this Court's July 26, 2023 Civil Standing Order:

Dated: September 19, 2023          Respectfully submitted,

                                   SHOOK, HARDY & BACON L.L.P.

                                   By: */s/ Amir M. Nassihi*
                                       Amir M. Nassihi
                                       Attorneys for Defendants